UNITED STATES of America,
Plaintiff–Appellee,

v.

James Emmanuel EARLS,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Monroe Jefferson MORRIS,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Barry D. BISCHOF, Defendant–
Appellant.

Nos. 93–6350, 93–6353 and 93–6403.

United States Court of Appeals,
Tenth Circuit.

Dec. 15, 1994.

M. Jay Farber, Asst. U.S. Atty. (Vicki Miles–LaGrange, U.S. Atty., with him on the brief), Oklahoma City, OK, for plaintiff-appellee.

Don J. Gutteridge, Jr. of Kerr, Irvine, Rhodes & Ables, Oklahoma City, OK, for defendant-appellant James Emmanuel Earls (No. 93–6350).

John Romig Smith, Choctaw, OK, for defendant-appellant Monroe Jefferson Morris (No. 93–6353).

Michael S. Homsey, Oklahoma City, OK, for defendant-appellant Barry Dean Bischof (No. 93–6403).

Before TACHA and KELLY, Circuit Judges, and VRATIL, District Judge.[†]

PAUL KELLY, Jr., Circuit Judge.

Mr. Earls, Mr. Morris and Mr. Bischof appeal from their convictions on various counts of drug and drug-related charges and from the district court's imposition of sentence. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and we affirm.

## Background

Mr. Earls, Mr. Morris and Mr. Bischof were arrested on January 26, 1993, following execution of search warrants at their residences. The arrests were the result of an eighteen month investigation by local, state, and federal agencies into a drug conspiracy. The investigation was facilitated by the use of numerous electronic devices such as wire taps, oral taps, and satellite tracking devices. The Oklahoma Court of Criminal Appeals had granted an order permitting the wiretaps in order to determine the extent of the drug conspiracy, the identity of those involved, and the manner in which the conspiracy operated.

Defendants were indicted for various drug and drug-related offenses on March 3, 1993. A continuance of trial was granted by a magistrate judge on March 30, 1993, based on a request by Mr. Morris and Mr. Bischof.

Mr. Earls objected to the continuance. The trial was nevertheless continued until July 12, 1993, at which time it commenced. Defendants were found guilty on August 2, 1993, and sentenced on October 4, 1993.

Mr. Earls argues on appeal that (1) the amount of time elapsed between his indictment and the trial constituted a violation of the Speedy Trial Act, 18 U.S.C. § 3161–3174; (2) there was insufficient evidence for the jury to conclude that Mr. Earls was part of a conspiracy; (3) the district court erred in failing to suppress the wiretap evidence introduced in the case; (4) the district court's determination of the quantity of drugs attributable to him was wrong; and (5) the district court erred in enhancing his sentence by two levels for the presence of a gun at his residence.

Mr. Bischof argues that the district court erred in (1) failing to suppress evidence obtained pursuant to the search warrant; (2) failing to suppress recorded evidence; (3) overruling Mr. Bischof's objection to the jury instruction for Count 38; and (4) improperly determining the quantity of drugs attributable to him.

Mr. Morris argues that the evidence presented at trial was insufficient to show that he was part of a conspiracy.

## I. Speedy Trial Act

Mr. Earls claims that he suffered a violation of the Speedy Trial Act ("the Act"), 18 U.S.C. §§ 3161–3174. The Act requires that the trial of a defendant charged with an indictment commence within seventy days from the date the indictment was filed or from the date the defendant appears before a judicial officer of the court in which such charge is pending, whichever date occurs last. *Id.* § 3161(c)(1). The Act, however, allows certain periods of time to be excluded when computing the amount of time elapsed before trial. *See id.* § 3161(h). We review the district court's denial of a motion to dismiss under the Act for an abuse of discre-

† Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

tion, however we review the district court's compliance with the requirements of the Act *de novo. United States v. Occhipinti,* 998 F.2d 791, 796 (10th Cir.1993).

■ Mr. Earls was indicted on March 3, 1993 and arraigned on March 5, 1993. The seventy day limit for trial began to run on March 6, 1993. *See United States v. Vasser,* 916 F.2d 624, 626 (11th Cir.1990), *cert. denied,* 500 U.S. 907, 111 S.Ct. 1688, 114 L.Ed.2d 82 (1991); *United States v. Blackmon,* 874 F.2d 378, 380 (6th Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 *and cert. denied,* 493 U.S. 859, 110 S.Ct. 168, 107 L.Ed.2d 125 (1989). Seven days later, his codefendants filed a pretrial motion for a continuance. Following a hearing, a continuance was granted until July 12, 1993. The time between the motion for continuance and the hearing on the motion is excludable. 18 U.S.C. § 3161(h)(1)(F). Additionally, the time allowed for the continuance is excludable. *Id.* § 3161(h)(7) ("A reasonable period of delay [shall be excluded] when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."); *id.* § 3161(h)(8)(A) ("Any period of delay resulting from a continuance granted by any judge [shall be excluded if] ... the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."); *United States v. Theron,* 782 F.2d 1510, 1514 (10th Cir.1986) ("[E]xtensions sought by one codefendant toll the limitations period of all."). As a result, the only nonexcludable days are those between indictment and the motion for continuance, a total of six days.

Mr. Earls argues that the delay resulting from the continuance should not be excluded because the court did not comply with the statutory requirement that the court set forth the reasons for its findings. *See* 18 U.S.C. § 3161(h)(8)(A). Specifically, Mr. Earls states that "nowhere in the entire record of this case are any reasons given for Magistrate Argo's finding that the 'ends of justice have been met.'" Brief for Appellant Earls at 10. At the hearing on the motion for continuance, however, Magistrate Argo specifically stated the factors on which he relied in finding that the ends of justice would be served by granting the continuance. Aplt.App. I Supp. at 22–23. Consequently, the amount of time that elapsed between Mr. Earls' indictment and his trial did not constitute a violation of the Act.

## II. Sufficiency Of The Evidence

Mr. Earls and Mr. Morris both argue that the evidence presented at trial was insufficient to support their conviction for conspiracy to possess with intent to distribute methamphetamine/amphetamine. We review the evidence in the light most favorable to the government to determine if a reasonable juror could find beyond a reasonable doubt from the evidence, along with reasonable inferences therefrom, that the defendants were guilty. *United States v. Deninno,* 29 F.3d 572, 576 (10th Cir.), *amended,* (Aug. 8, 1994).

■ In order to prove a drug conspiracy, the government must show that two or more persons agreed to violate the law, the defendant knew the essential objectives of the conspiracy, and the defendant knowingly and voluntarily became a part of it. *United States v. Morehead,* 959 F.2d 1489, 1499 (10th Cir.1992). Mere association with coconspirators does not make one a participant in the conspiracy. *United States v. Garcia,* 994 F.2d 1499, 1504 (10th Cir.1993).

Mr. Earls claims that there is no evidence demonstrating that he was a part of the conspiracy. Government witnesses and recorded conversations, however, implicate Mr. Earls as Mr. Bischof's drug supplier. Moreover, testimony and telephone records reveal a recurring pattern of interstate drug activity.

■ Mr. Morris claims that nothing in the record indicates that he had any connection with the coconspirators other than as an old friend. However, taped conversations between Mr. Morris and Mr. Bischof and between Mr. Morris and a confidential informant implicate Mr. Morris in the drug conspiracy. Mr. Morris claims that references to "parts," a "trailer," "front end parts" and "green" in these phone conversations involved innocent talk regarding the repair of automobiles and motorcycles. Based upon

expert testimony, however, the jury could have determined that these were code words for drugs.

### III. Suppression Of Recorded Evidence

■ Mr. Bischof and Mr. Earls both argue that the district court should have suppressed the recorded evidence because the government did not terminate the wiretaps after the objective of the interception was met, and did not minimize the interception. In reviewing the denial of the motion to suppress, we view the district court's fact findings under the clearly erroneous standard. *United States v. Caro,* 965 F.2d 1548, 1551 (10th Cir.1992).

Under 18 U.S.C. § 2518(5), an intercept "must terminate upon attainment of the authorized objective." The government stated that the objective of the intercept in this case was to "determine the total means of the conspiracy, the manner in which they operated, and who all of the players were." Aplt. App. at 89. Mr. Bischof and Mr. Earls claim that law enforcement officials knew of all the persons involved in the conspiracy prior to termination of the wiretap, and that all evidence recorded after that knowledge was gleaned should have been suppressed. Defendants, however, have failed to show that the objective of the wiretap was met prior to its termination. *See United States v. Brown,* 941 F.2d 656, 659 (8th Cir.1991) (holding that a wiretap may lawfully continue past the point that officers learned of the defendant's source of drugs because the officers had not yet learned of the extent of the conspiracy and the identity of the coconspirators). Moreover, Defendants' argument that the broadness of the objective created an indefinite intercept is without merit.

Intercepts must be "conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter...." 18 U.S.C. § 2518(5). Mr. Earls claims that the frequency of intercepted calls amounted to a blanket interception in violation of the minimization requirement. Determination of proper minimization is analyzed under a reasonableness standard and depends on the circumstances of the wiretap. *See Scott v.*

*United States,* 436 U.S. 128, 137, 139–40, 98 S.Ct. 1717, 1724–25, 56 L.Ed.2d 168 (1978). When the investigation involves a widespread conspiracy, "more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." *Id.* at 140, 98 S.Ct. at 1725. The interception of nonpertinent calls does not automatically indicate a failure to meet the minimization requirement. *See id.* at 140–41, 98 S.Ct. at 1724–25.

In a case such as this one, which involves numerous players, difficulty arises in determining the relevance of each call. As a result, we conclude that the district court was not clearly erroneous in denying the motions to suppress.

### IV. Determination Of Drug Quantity

■ Mr. Earls and Mr. Bischof argue that the district court's determination of the amount of drugs attributable to them for purposes of calculating their base offense levels was erroneous. We review determinations of drug quantities under a clearly erroneous standard. *United States v. Roederer,* 11 F.3d 973, 981 (10th Cir.1993). We will not alter the district court's determination unless there is no factual support in the record or we are firmly convinced that a mistake has been made. *United States v. Easterling,* 921 F.2d 1073, 1077 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991).

■ The amount of drugs that the presentence report assessed to Mr. Earls exceeds the amount alleged in the government's indictment. Mr. Earls objects to this discrepancy. His objection is without merit, however, because the sentencing court may look beyond the charges alleged in the indictment. *United States v. Underwood,* 982 F.2d 426, 429 (10th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 729 (1993).

■ Further, Mr. Earls and Mr. Bischof argue that the government did not prove the quantity of drugs by a preponderance of the evidence, and that the evidence did not meet a minimum indicia of reliability. Estimates of drug quantities are an acceptable method of calculating the quantities so long as the estimates are based on informa-

tion which carries a minimum indicia of reliability. *Easterling*, 921 F.2d at 1077. At sentencing, Gerald Merriman testified that Mr. Bischof stated he went to California every five to six weeks and picked up five to six pounds of drugs. Aplt.App. at 1437. Mr. Earls and Mr. Bischof attack the credibility of Mr. Merriman and argue that his statements were wholly uncorroborated. The trial judge, however, found Mr. Merriman's testimony to be a "truthful account." Aplt.App. at 1517. Moreover, the testimony about the trips to California was corroborated by telephone toll records, body mike conversations, and tape-recorded phone calls, collected by the government. Aplt.App. at 1475–1491.

We cannot find that Mr. Merriman's testimony was too unreliable to support the trial judge's conclusions. *See United States v. Coleman*, 947 F.2d 1424, 1428 (10th Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992). Consequently, the findings of the district court regarding the quantity of drugs used at sentencing were not clearly erroneous.

### V. Enhancement Of Sentence

Mr. Earls argues that the district court erred in enhancing his sentence for the presence of a gun at his residence. *See* U.S.S.G. § 2D1.1(b)(1). We review the district court's factual findings under the clearly erroneous standard and its interpretation of the sentencing guidelines *de novo*. *United States v. Chatman*, 994 F.2d 1510, 1516 (10th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993).

 Officers found a partially loaded gun in Mr. Earls' bedroom at the time of his arrest. Commentary to Section 2D1.1 states that "[t]he [sentence] adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. (n. 3). The government bears the burden of proving by a preponderance of the evidence that the gun was proximate to the offense. *Chatman*, 994 F.2d at 1517–18. The defendant, however, must present evidence of the "clearly improbable" exception. *See id.* at 1518.

 Mr. Earls argues that there was no testimony at trial or sentencing implying that any drug transaction took place at his residence. During the search of Mr. Earls' residence, however, officers found amounts of marihuana consistent with distribution purposes, drug paraphernalia, and methamphetamine. Moreover, the government presented evidence that the residence was used in furtherance of the drug business through both telephonic communications and actual meetings. The district court's finding on this issue is not clearly erroneous.

### VI. Suppression Of Evidence Obtained Through Search Warrant

 Mr. Bischof argues that the district court erred in denying his motion to suppress evidence obtained pursuant to a search warrant executed at his residence. We accept the trial court's findings of fact unless clearly erroneous and view the evidence in the light most favorable to the government. *United States v. Dahlman*, 13 F.3d 1391, 1394 (10th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994). We determine the sufficiency of a search warrant *de novo*. *Id.*

 The search warrant authorized a search of the "PREMISES KNOWN AS 1601 N. Council, Oklahoma City, Oklahoma." An attachment to the warrant gave a physical description of the residence at the address. In addition to searching the residence, the officers searched the premises, including a detached garage, detached office, and shed, finding drugs and firearms. Mr. Bischof argues that the search went beyond the scope of the search warrant, thus converting it into a general warrant. He further argues that there was no probable cause to search the outbuildings at his residence.

In *Dahlman*, we held that where a warrant merely states that a premises is to be searched, and does not specify that a residence on the premises is to be searched, officers may not lawfully search the residence. *Id.* at 1395–96. This case is clearly distinguishable from *Dahlman*, because the warrant in this case specifically authorized a search of the residence, in addition to the premises. Protection of the traditional sanc-

tity of the home is not at issue, as it was in *Dahlman.* *See id.* at 1396.

In *United States v. Sturmoski,* 971 F.2d 452 (10th Cir.1992), we held that the search of a horse trailer located within the curtilage of the premises described by the search warrant was lawful, even though the warrant contained no description of the horse trailer. *Id.* at 458; *see also United States v. Gottschalk,* 915 F.2d 1459, 1461 (10th Cir.1990) (holding that a search warrant authorizing the search of a certain premises lawfully includes the search of any vehicles located within its curtilage, if the objects of the search might be located in the vehicle). A warrant's " 'description is sufficient [if it] enable[s] the officers to ascertain the place to be searched' with reasonable effort." *Sturmoski,* 971 F.2d at 458 (quoting *United States v. DePugh,* 452 F.2d 915, 920 (10th Cir.1971), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805 (1972)).

Here, the warrant stated the physical address of the premises and gave a description of the residence. The detached garage, shed, and office, are the type of buildings which are ordinarily a part of residential property. We conclude that the warrant described the premises and outbuildings with sufficient particularity. *See Sturmoski,* 971 F.2d at 458. The warrant authorizing the search of the premises including the residence on that particular premises permitted the search of the outbuildings within the curtilage of the residence. *See United States v. Williams,* 687 F.2d 290, 292–93 (9th Cir. 1982); *United States v. Meyer,* 417 F.2d 1020, 1023 (8th Cir.1969). Mr. Bischof concedes that the outbuildings are located within the curtilage of his home. As a result, the search did not exceed the scope of the warrant. Moreover, even if the officers had exceeded the scope of the warrant by searching the outbuildings, a review of the record convinces us that the fruits of the search would be admissible under the good-faith exception articulated in *United States v. Leon,* 468 U.S. 897, 906–25, 104 S.Ct. 3405, 3411–22, 82 L.Ed.2d 677 (1984). *See also Dahlman,* 13 F.3d at 1397.

Having concluded the search of the outbuildings was authorized by the search warrant, we need not address Mr. Bischof's contention on appeal that there was no probable cause to search the outbuildings.

## VII. Objection To The Jury Instruction

■ Mr. Bischof argues that the district court broadened his indictment by improperly instructing the jury as to Count 38. The indictment charges that Mr. Bischof "did knowingly use and carry a firearm," Aplt. App. at 28, but the statute that Count 38 is based upon and the instruction given to the jury refer to the use "or" carrying of a firearm. 18 U.S.C. § 924(c); *see* Aplt.App. at 1375–76. Defendant claims that the use of a disjunctive in the jury instruction impermissibly broadened the indictment. Our review is *de novo.* *United States v. Sasser,* 974 F.2d 1544, 1551 (10th Cir.1992), *cert. denied,* ── U.S. ──, 113 S.Ct. 1063, 122 L.Ed.2d 368 (1993).

"[I]t is generally accepted procedure to use 'and' in an indictment where a statute uses the word 'or' ... [because] [t]his assures that defendants are not convicted on information not considered by the grand jury." *United States v. Daily,* 921 F.2d 994, 1001 (10th Cir.1990), *cert. denied,* 502 U.S. 952, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991). Moreover, it is "entirely proper" for the district court to instruct the jury in the disjunctive, though the indictment is worded in the conjunctive. *United States v. Hager,* 969 F.2d 883, 890 (10th Cir.), *cert. denied,* ── U.S. ──, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992). As a result, the indictment was not broadened.

AFFIRMED.