**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEVEN PAUL BRADLEY,

Defendant - Appellant.

No. 06-8021
(D. Ct. No. 03-CR-102-01-WFD)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **MURPHY**, Circuit Judge, and **LUNGSTRUM**,[**] District Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

A jury convicted Defendant Steven Bradley on all counts of a five-count indictment. Mr. Bradley appeals the District Court's denial of his motion for a judgment

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]The Honorable John W. Lungstrum, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

of acquittal on three counts, as well as the court's denial of his motion for a new trial. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. Bradley's conviction on all counts.

## I. Background

In January 2003, Mr. Bradley drove on his motorcycle to the Cowboy Dodge car dealership in Cheyenne, Wyoming. He stopped near the dealership's showroom and threw an object, later identified as a World War II Japanese hand grenade, at a group of sales associates. Law enforcement officers subsequently removed the grenade from the dealership's property and detonated it at a police firing range. Not long after the incident, the police also arrested Mr. Bradley. During an interview with police, Mr. Bradley explained that the dealership had refused to refund the $26,000 he paid them for a truck with which he was dissatisfied. He also admitted that he threw the grenade at the dealership, stating "special delivery," in an effort to send the dealership a message. Inside the grenade, Mr. Bradley had placed a note demanding that the dealership return his $26,000.

The government subsequently charged Mr. Bradley with the following five offenses: being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2) (count one); being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2) (count two); possessing a firearm not registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5861(d) & 5871 (count three); interfering with commerce by extortion in violation of the

Hobbs Act, 18 U.S.C. § 1951(a) (count four); and possessing a destructive device during and in relation to a violent crime in violation of 18 U.S.C. § 924(c)(1)(B)(ii) (count five). Mr. Bradley went to trial on all five counts. At the close of the Government's case-in-chief, he moved for judgment of acquittal on counts two, four, and five, and the District Court reserved ruling on the motion until the jury returned its verdict.

During the trial, Mr. Bradley's defense counsel notified the court that he had ethical concerns about participating in his client's testimony. In response, the court gave Mr. Bradley the choice of not testifying or testifying in narrative form without the participation of his attorney. Mr. Bradley chose to testify in narrative form. The jury found him guilty on all counts, and the District Court subsequently denied Mr. Bradley's motion for judgment of acquittal on counts two, four, and five, as well as his motion for a new trial.

## II. Discussion

Mr. Bradley challenges his conviction on three grounds. First, he argues that the District Court erred in denying his motion for judgment of acquittal on count two (felon in possession of a firearm) because the evidence at trial did not establish the grenade's nexus with interstate commerce. Second, he contends that the District Court erred in not entering a judgment of acquittal on counts four and five because the evidence did not show that he intended to interfere with commerce when he threw the grenade. Third, he claims that the District Court erred in denying his motion for a new trial. According to Mr. Bradley, he is entitled to a new trial because his Sixth Amendment right to effective

assistance of counsel was violated when the District Court made him choose between not testifying and testifying in narrative form without his defense counsel's participation. For the reasons specified below, we find Mr. Bradley's arguments unavailing.

A.    Motion for Judgment of Acquittal on Counts Two, Four, and Five

We review both the denial of a motion for judgment of acquittal and the sufficiency of the evidence de novo. *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000). "[V]iewing the evidence in the light most favorable to the government," we ask whether "any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *Id.* In reviewing the record, we consider only the evidence entered at the close of the government's case-in-chief because Mr. Bradley moved for judgment of acquittal after the government rested. *Id.*

1.  Grenade's Nexus with Interstate Commerce

Mr. Bradley argues that the District Court should have entered judgment of acquittal on his conviction for possessing a firearm (i.e., the grenade)[1] in violation of 18 U.S.C. § 922(g)(1) because the government did not present evidence satisfying § 922(g)'s requirement that the firearm be possessed "in or affecting commerce." Specifically, he argues that the fact the grenade traveled across state lines does not satisfy the statute's interstate commerce requirement.[2] In support of a stricter nexus requirement, Mr.

_____

[1] The definition of "firearm" under 18 U.S.C. § 921(a)(3) includes "any destructive device," which is further defined to include a grenade, *id.* § 921(a)(4)(A)(ii).

[2] In his opening brief, Bradley also notes that the indictment charged him with possession of a firearm that had traveled "in and affected interstate commerce," while the

- 4 -

Bradley cites *United States v. Bass*, 404 U.S. 336 (1971), in which the Supreme Court indicated that possession of a firearm may require a stronger nexus with commerce than receipt of a firearm, which requires showing only that the firearm received had previously traveled in interstate commerce. *Id.* at 350–51. But the Supreme Court later clarified this dicta from *Bass* and held that Congress did not intend to distinguish between possession and receipt, but intended to "reach possessions broadly" by requiring only a "minimal nexus" with interstate commerce. *Scarborough v. United States*, 431 U.S. 563, 575, 575 n.11 (1977).

Citing *Scarborough*, this Court has held that the government establishes the required nexus with interstate commerce when it proves that the firearm previously traveled across state lines. *See United States v. Williams*, 403 F.3d 1188, 1195 (10th Cir. 2005) ("Proof that the gun was manufactured in California and possessed by [the

statute criminalizes possession "in *or* affecting commerce," 18 U.S.C. § 922(g) (emphasis added). He claims that the difference in language resulted in a variance because the government did not prove that the grenade traveled in *and* affected commerce. In other words, he apparently claims that the District Court's instructions and proof at trial for possession in *or* affecting commerce impermissibly broadened the indictment. *See United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007) (explaining that such broadening of an indictment is a "constructive amendment, which is reversible per se"). Because he does not develop this argument, we do not think he properly raised it. *See United States v. Callwood*, 66 F.3d 1110, 1115 n.6 (10th Cir. 1995) ("A litigant who mentions a point in passing but fails to press it by supporting it with pertinent authority . . . forfeits the point." (quotation omitted)). But even if he had properly raised it, we would reject it. The government may use the conjunctive in an indictment when the statute uses the disjunctive because this "assures that defendants are not convicted on information not considered by the grand jury." *United States v. Earls*, 42 F.3d 1321, 1327 (10th Cir. 1994) (quotation omitted). Moreover, a district court does not impermissibly broaden the indictment by instructing the jury in the disjunctive when the indictment uses the conjunctive. *Id.*

- 5 -

defendant] in Kansas is sufficient to establish the nexus with interstate commerce."); *see also United States v. Gourley*, 835 F.2d 249, 251 (10th Cir. 1987) (holding that evidence that gun was manufactured in Spain and possessed in Oklahoma was "sufficient to show that the firearm was 'in or affecting commerce'").  During Mr. Bradley's trial, the Government presented evidence that the grenade was manufactured in Japan and possessed by Mr. Bradley in Wyoming.  This is sufficient evidence of the grenade's nexus with interstate commerce.  The District Court did not therefore err in denying Mr. Bradley's motion for judgment of acquittal on this basis.

2.  Nexus with Interstate Commerce under the Hobbs Act

The jury found Mr. Bradley guilty under the Hobbs Act, 18 U.S.C. § 1951, of interfering with interstate commerce by attempted extortion.[3]  Mr. Bradley argues that the District Court should have entered judgment of acquittal on this count (count four).  Specifically, he argues that a violation of 18 U.S.C. § 1951(a), based on attempted extortion, requires a showing of specific intent to interfere with commerce.  Furthermore, he contends that his conviction on count five depends on his conviction on count four because count five requires possession of a destructive device during and in relation to a violent crime (i.e., the attempted extortion).  A judgment of acquittal on count four would

---

[3]The statute provides: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."  18 U.S.C. § 1951(a).

therefore require a judgment of acquittal on count five as well.

Mr. Bradley's argument is clearly foreclosed by our precedent. As we have repeatedly noted, the government need only show a potential or de minimis effect on interstate commerce to satisfy the interstate commerce element of the Hobbs Act. *See United States v. Curtis*, 344 F.3d 1057, 1070 (10th Cir. 2003); *United States v. Wiseman*, 172 F.3d 1196, 1214 (10th Cir. 1999); *United States v. Nguyen*, 155 F.3d 1219, 1228 (10th Cir. 1998); *United States v. Zeigler*, 19 F.3d 486, 489 (10th Cir. 1994); *United States v. Lotspeich*, 796 F.2d 1268, 1270 (10th Cir. 1986); *United States v. Boston*, 718 F.2d 1511, 1516–17 (10th Cir. 1983). Contrary to Mr. Bradley's argument, the Government did not have to prove he *intended* to interfere with commerce in order to obtain a conviction based on attempted extortion. The required nexus with interstate commerce is the same whether a defendant is charged with extortion or attempted extortion. *See Lotspeich*, 796 F.2d at 1270 (noting that the government need only prove that the defendant's attempted extortion had a "limited effect on interstate commerce"); *Boston*, 718 F.2d at 1516–17 (affirming jury instruction specifying that government must "prove that the natural consequences of the acts or attempted acts alleged in the indictment would be to delay, interrupt or affect 'interstate commerce'"); *see also United States v. Farrell*, 877 F.2d 870, 875 (11th Cir. 1989) ("Where attempted extortion or conspiracy to extort are charged, the interstate nexus may be demonstrated by evidence of potential impact on interstate commerce or by evidence of actual, de minimis impact." (citations omitted)).

Here, the government presented sufficient evidence that Mr. Bradley's attempted extortion had a potential impact on interstate commerce. The evidence established that the car dealership sells new and used cars and trucks manufactured outside Wyoming and is therefore engaged in interstate commerce. In addition, the government introduced evidence that the car dealership had to close down until the police could remove the grenade. While the dealership was closed, it could have lost customers and made fewer sales, thereby reducing the assets available for future purchases of cars and trucks in interstate commerce. *See Nguyen*, 155 F.3d at 1228 ("[A] depletion of assets potentially affecting interstate commerce constitutes a sufficient nexus to interstate commerce under the Hobbs Act."). Similarly, the natural consequences of Mr. Bradley's attempted extortion had the potential to affect commerce; had he obtained the $26,000, the dealership's total assets would be depleted, reducing the amount that the dealership could spend in purchasing cars from out-of-state manufacturers. *See Curtis*, 344 F.3d at 1071 (citing *United States v. Brown*, 959 F.2d 63, 68 (6th Cir. 1992), in which the court held that the nexus between an attempted robbery and interstate commerce was satisfied because, if the defendant had succeeded, the depletion of the businesses' assets could have affected interstate commerce); *Farrell*, 877 F.2d at 875 (holding that the evidence established a nexus with interstate commerce because "had the [defendants'] extortion scheme succeeded, the likely natural effect was that interstate commerce would have been affected"); *see also United States v. Curcio*, 759 F.2d 237, 242 (2d Cir. 1985) (holding that, when a defendant is charged with attempted extortion under 18 U.S.C. § 1951, the

government need only show that an effect on interstate commerce is possible).  Because the government presented sufficient evidence that Mr. Bradley's attempted extortion had the potential to affect interstate commerce, the District Court did not err in denying his motion for judgment of acquittal on this basis.

B.      Motion for a New Trial Based on Ineffective Assistance of Counsel

Lastly, Mr. Bradley contends that the District Court erred in denying his motion for a new trial based on his claim of ineffective assistance of counsel.  We decline to address the merits of this claim and instead dismiss it.  As we have previously held, claims based on ineffective assistance of counsel "should be brought on collateral review, in the first petition filed under 28 U.S.C. § 2255," so that a factual record enabling effective appellate review may be developed in the district court.  *United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir. 1995) (en banc).  As the Supreme Court has explained, "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete and or inadequate for this purpose."  *Massaro v. United States*, 538 U.S. 500, 504–05 (2003).  For this reason, we dismiss ineffective-assistance claims brought on direct appeal except in rare instances not present here, such as when claims are "fully developed in the record."  *Galloway*, 56 F.3d at 1242.  We therefore dismiss Mr. Bradley's ineffective-assistance claim so that he may raise it in collateral proceedings under 18 U.S.C. § 2255.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Mr. Bradley's conviction on all counts.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge