2008 OK CR 2

**Taleeta CARTER, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2006–103.

Court of Criminal Appeals of Oklahoma.

Jan. 17, 2008.

---

Robert Locke & Larry Moore, Muskogee, OK, for appellant at trial.

Clayton Neimeyer, Assistant District Attorney, Chandler, OK, Scott Rowland, General Counsel, Oklahoma Bureau of Narcotics, Oklahoma City, OK, for the state at trial.

Gary J. James, Oklahoma City, OK, for appellant on appeal.

W.A. Drew Edmondson, Attorney General Of Oklahoma, Donald D. Self, Assistant Attorney General, Oklahoma City, OK, for appellee on appeal.

## *OPINION*

LUMPKIN, Presiding Judge.

¶ 1 Appellant, Taleeta Carter, was tried by jury in the District Court of Lincoln County, Case Number CF–2004–203, before the Honorable Paul M. Vassar, and convicted of Conspiracy to Traffic Methamphetamine (Count I) in violation of 63 O.S.2001, § 2–408; and Unlawful Use of Communication Facility to Facilitate a Felony (Count II) in violation of 13 O.S.Supp.2003, § 176.3(8). The jury set punishment at ten (10) years imprisonment and a $50,000 fine on Count I; and five (5) years imprisonment and a $25,000 fine on Count II. The trial judge sentenced Appellant accordingly and ordered the sentences to run consecutively. Appellant now appeals her convictions and sentences.

¶ 2 Appellant raises the following propositions of error in this appeal:

I. The trial court erred when it admitted several intercepted phone calls since the calls were intercepted in violation of the Court of Criminal Appeals Wiretap Order;

II. The trial court erred in finding that the state presented sufficient evidence to connect the defendant to a conspiracy;

III. The trial court erred in allowing Agent Stewart to move from testifying to the meaning of the coded drug lan-

guage to providing sweeping conclusions and interpretations about the general meaning of recorded conversations played during Appellant's trial;

IV. The trial court erred by allowing Agent Stewart to testify as an expert witness without holding a *Daubert* Hearing;

V. The trial court erred by allowing Agent Stewart to usurp the fact finding function of the jury by testifying to the ultimate issue of Appellant's guilt or innocence;

VI. The trial court erred by allowing inadmissible evidence involving prior wrongs or acts to be played during Appellant's trial;

VII. Appellant's trial counsel's representation fell below an objective standard of reasonableness and but for counsel's errors, the results of Appellant's trial would have been different; and,

VIII. The cumulative effect of the irregularities during the course of Appellant's trial prejudiced the rights of the Appellant and denied her a fair trial.

¶ 3 After thorough consideration of these propositions and the entire record before us, including the original record, transcripts, and briefs of the parties, we find reversal or modification is not required.

¶ 4 Agent Stewart of the Oklahoma State Bureau of Narcotics (OSBN) conducted an extensive investigation of Harlan Evans (Evans) and his drug distribution ring from early 2003 through July 2004. This Court has recently handed down two decisions from that same investigation, *State v. Gary Smith,* F–2006–254, and a published case, *Evans v. State,* 2007 OK CR 13, 157 P.3d 139, which

resulted in a conviction for the alleged leader of this drug conspiracy, Evans.

¶ 5 In this case, Agent Stewart had Evans's cell phone wire tapped. As a result, Stewart intercepted several phone calls between Evans and Appellant. Based on these calls, Appellant was arrested and charged as set out above.[1]

¶ 6 Before Appellant's trial, a Harjo [2] hearing was held to determine the admissibility of co-conspirator statements. The trial court held the statements were admissible as evidence against Appellant. Several intercepted phone calls involving Evans (but not Appellant) were offered into evidence to set the scene and help the jury understand the overall conspiracy and its ring leader, Evans.

¶ 7 The State's conspiracy theory was that Evans was at the "hub" of this mass "wheel conspiracy" and Appellant was one of many different spokes on that wheel. The incriminating evidence included five intercepted phone calls between Appellant and Evans, along with Agent Stewart's testimony. During trial, the phone conversations were played for the jury and Stewart's testimony was offered to interpret those conversations, primarily because the participants used coded language when discussing drug transactions. Stewart was allowed to testify what the language meant and what he believed Appellant and Evans were discussing. The jury was instructed that it was for them to decide what weight and credibility to give to Stewart's testimony.

▪▪▪ ¶ 8 With respect to proposition one, we find defense counsel did not specifically object that the intercepted phone calls were not properly "minimized" pursuant to 13 O.S. 2001, § 176.9(E) [3] or other authority. That

---

1. In the overall investigation, over 2,000 of Evans's calls were intercepted, but many of these were not monitored for various reasons, including the fact that agents turned off the equipment at night.

2. *Harjo v. State,* 1990 OK CR 53, ¶ 20, 797 P.2d 338, 345.

3. "No order entered pursuant to this section may authorize the interception of any wire, oral or electronic communication for any period longer than is necessary to achieve the objective of the authorization, or in any event, longer than thirty

(30) days. Extensions of an order may be granted, but only upon application for an extension made in accordance with. . . . Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, *shall be conducted in such a way as to minimize the interception of communications* not otherwise subject to interception under the Security of Communications Act and must terminate upon attainment of the authorized objective or within the time authorized as provided by this section." (emphasis added)

being so, we review for plain error. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 693. In finding no plain error, we adopt the Supreme Court's reasonableness standard as set forth in *Scott v. United States*, 436 U.S. 128, 137, 139–140, 98 S.Ct. 1717, 1724–25, 56 L.Ed.2d 168 (1978).[4] There, the Supreme Court upheld a Court of Appeals decision which found a decision on a suppression motion "must ultimately be based upon the reasonableness of the actual interceptions and not whether the agents specifically intended to minimize their interceptions." *Scott*, 436 U.S. at 134, 98 S.Ct. at 1721. In other words, like other Fourth Amendment cases, we look at the objective reasonableness of what the agents did, rather than subjective motives.[5]

¶ 9 Accordingly, when looking at this investigation in its entirety and discerning what the investigators were trying to accomplish, we note, as did the Supreme Court, that additional flexibility is called for in this case for numerous reasons: the phone calls in this case were often "ambiguous in nature;" "coded language" was used; a "widespread conspiracy" was being investigated; the tapped phone was a private, not public phone; the surveillance was in its "early stages;" and many calls were short, thus giving little time to determine their relevance.[6] *Scott*, 436 U.S. at 140–42, 98 S.Ct. at 1725–26. More importantly, however, all five of the calls admitted as evidence against Appellant were pertinent to the investigation. In accordance with *United States v. Willis*, 890 F.2d 1099, 1101 (10th Cir.1989), and issues of standing put aside, such pertinent phone calls are not subject to the minimization requirement.[7]

■ ¶ 10 With respect to proposition two, we find, given the fairly strong circumstantial evidence presented, viewed in a light most favorable to the state, any rational trier of fact could have found Appellant guilty beyond a reasonable doubt. *See Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559. Though circumstantial, the record in this case shows Appellant discussing the amount of money she would charge for the drugs, the quantity of drugs she had, the quality, how her source treated her, her drug-related goals, and arrangements for meeting Evans for an exchange.

■ ¶ 11 With respect to propositions three through five, we find the trial court did not abuse its discretion by allowing Agent Stewart to testify as an expert [8] about certain 'code' meanings of words and phrases used by Appellant and her associates in telephone conversations. *See Evans v. State*, 2007 OK CR 13, ¶ 5, 157 P.3d at 142 ("the trial court did not abuse its discretion in permitting a

---

4. This Court has been afforded few opportunities to review The Security of Communications Act. In doing so we find it was modeled after Title III of the Federal Omnibus Crime Control and Safe Streets Act of 1968 and as such we find the use of analysis by Federal Courts to be reasonable and appropriate. *See Oklahoma Attorney General Opinion*, 2000 OK AG 45, ¶ 1; 18 U.S.C. §§ 2515–2518.

5. Our review, then, demands an evaluation of the facts and circumstances of each case. *See United States v. Killingsworth*, 117 F.3d 1159, 1165 (10th Cir.1997).

6. Appellant's argument for minimization of the phone calls is illogical and not supported as we interpret the Legislature's intent in the Security of Communications Act. To follow Appellant's argument would mean drug dealers could simply start every conversation with a few minutes of small talk and the surveillance would have to be terminated before they began discussing their transactions.

7. This case is similar to *United States v. Earls*, 42 F.3d 1321 (10th Cir.1994), where the defendants were arrested as the result of an eighteen month investigation by local, state, and federal agencies into a drug conspiracy. The defendants claimed that the trial court erred by denying the motion to suppress intercepted calls. *Id.* at 1325. The Court upheld the trial court's ruling denying the motion to suppress because the minimization statute had reasonably been complied with. *Id.* The Court reasoned that, because the objective of the intercept in this case was to determine the total means of the conspiracy, Appellant had failed to show that the objective of the wiretap was met prior to its termination. *Id.* The Court also held that more extensive surveillance may be justified when an investigation involves a conspiracy. The Court added that the interception of non-pertinent calls does not automatically indicate a failure to meet the minimization requirement. *Id.*

8. The State's "failure" to formally qualify the agent as an expert on the ways of drug dealers, if error at all, was harmless, as the records shows Stewart was obviously qualified in this area.

police witness to testify about certain 'code' meanings of words and phrases used by Appellant and his associates in telephone conversations. These interpretations were based upon the officer's personal experience and training in drug interdiction, they were helpful to the jury, they did not improperly tell the jury who or what to believe, and the witness was subjected to cross-examination about his interpretations."). *See also United States v. Quintana*, 70 F.3d 1167, 1171 (10th Cir.1995); *Box v. State*, 1975 OK CR 194, ¶ 9, 541 P.2d 262, 265; *Romano v. State*, 1995 OK CR 74, ¶ 21 –25, 909 P.2d 92, 110.

¶ 12 In *United States v. Griffith*, 118 F.3d 318, 321 (5th Cir.1997),[9] the Court dealt with similar issues and reasoned as follows:

> Drug traffickers' jargon is a specialized body of knowledge, familiar only to those wise in the ways of the drug trade, and therefore a fit subject for expert testimony. As one court observed, "There is no more reason to expect unassisted jurors to understand drug dealers' cryptic slang than antitrust theory or asbestosis." *United States v. Delpit*, 94 F.3d 1134 (8th Cir.1996) (citation omitted). In short, "Jurors as well as judges often need help in deciphering the jargon of those engaged in the drug trade." *United States v. Walls*, 70 F.3d 1323, 1326 (D.C.Cir.1995), *cert. denied*, 517 U.S. 1147, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996).

Besides, we must assume the jury followed its instructions, including the credibility of the opinion witness testimony. As such, propositions three through five must fail.

¶ 13 With respect to proposition six, we find defense counsel did not object to the admission of the phone calls on the grounds that they were considered evidence of other crimes or bad acts. Thus, we review for plain error. *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. While we reject the State's claim that all discussions in the calls were *res gestae* and agree with the defense that portions of the intercepted discussions were not relevant and could have been redacted, we find the vast majority of the "incidents" are not evidence of other crimes or even necessarily bad acts, but simply discussions that frame Appellant's "sexually active" character. As such, we find no plain error in their admission or in the trial court's failure to *sua sponte* instruct the jury regarding the proper use of such evidence. Acts do not automatically fall under the category of other crimes or bad acts simply because they are morally questionable.

¶ 14 With respect to proposition seven, we find that, while Appellant has shown some deficiencies in counsel's performance in failing to raise minimization challenges and make certain redaction and jury instruction requests, she has failed to show errors by counsel that were so serious as to deprive her of a fair trial, one with a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Moreover, regarding proposition eight, the cumulative effect of those did not deny Appellant a fair trial.

### DECISION

¶ 15 The judgment and sentences are hereby **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2006), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, V.P.J., recused.

CHAPEL and LEWIS, JJ., concur.

A. JOHNSON, J., concurs in results.

9. Griffith also addressed the issue of a State's failure to formally qualify the agent as an "expert" on the ways of drug dealers. While the Court did not definitively rule that the agent should have been formally qualified, it found the trial court did not abuse its discretion in allowing the agent to testify on such matters. At most, the Court reasoned, the state had committed a "technical error." *Griffith*, 118 F.3d at 323.