FILED
**United States Court of Appeals
Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**March 7, 2024**

**Christopher M. Wolpert
Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RICHARD RONQUILLO,

    Defendant - Appellant.

No. 22-1247

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:21-CR-00356-RM-1)**

_____

Deborah Lynn Roden, Woodhouse Roden Ames & Brennan, Boulder, Colorado, for Defendant-Appellant Richard Ronquillo

Jena Rose Neuscheler, Assistant United States Attorney, Denver, Colorado (Cole Finegan, United States Attorney, with her on the brief) for Plaintiff-Appellee United States of America

_____

Before **CARSON**, **BALDOCK**, and **EBEL**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

Courts have agonized over the parameters of curtilage since Justice Holmes first hinted at the idea nearly a century ago in Hester v. United States, 265 U.S. 57, 59 (1924).  Once again, we find ourselves confronting this complex matter in a series

of events that led officers to find Defendant Richard Ronquillo sleeping in a detached garage. Officers found methamphetamine, cocaine, and heroin on his person. Defendant filed a motion to suppress, claiming that officers wrongly entered because the search warrant did not include the detached garage. The district court denied the motion and found the search warrant authorized the detached garage because it fell within the curtilage. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court.

## I.

The Denver Police Department (DPD) received information from a confidential informant (CI) that an individual was selling methamphetamine at 836 North Linley Court. While conducting surveillance the DPD observed various people enter the residence, stay for around five to ten minutes, and then leave. The DPD used its CI to conduct two separate controlled buys. Both times, the CI entered the residence and bought methamphetamine. Based on this information, the DPD obtained a search warrant for the place described as "836 North Linley Court, a single family structure with green siding and trim on the east side of North Linley Court with a black metal security door with the numbers '836' to the right of the door in black."

The property at 836 North Linley Court contained two structures: the main residence and a detached garage. A brick and wrought iron fence lined the property's front perimeter and a chain link fence extended from the sides of the detached garage and lined the property's back perimeter. The detached garage stood about twenty-

five feet away from the residence with a walkway connecting the two structures. The detached garage had two boarded-up windows and a door facing the backyard and the residence. A sealed and inoperable garage door faced the alley.

On October 24, 2018, the DPD Special Weapons and Tactics (SWAT) team executed the warrant, securing the residence, the occupants, and the backyard. At the time of the raid, the SWAT team had no visibility into the detached garage because of the boarded-up windows. The SWAT team breached the detached garage to secure the interior. The SWAT team found Defendant sleeping on a bed and ordered him to exit. Defendant arose from the bed, shoved a plastic bag into his rear pocket, and exited the detached garage where the SWAT team detained Defendant. Officers performed two pat downs on Defendant and found cocaine, methamphetamine, and heroin.[1]

Defendant moved to suppress the evidence found on his person. The district court denied the motion and a jury convicted Defendant of possession with intent to distribute methamphetamine, cocaine, and heroin. The district court sentenced Defendant to 210 months' imprisonment. Defendant now appeals the district court's denial of his motion to suppress.

## II.

"We look at the totality of the circumstances in reviewing the denial of the motion to suppress." United States v. Dennison, 410 F.3d 1203, 1207 (10th Cir.

---

[1] Defendant challenged the second pat down before the district court but abandoned that challenge on appeal.

2005) (citing United States v. Gay, 240 F.3d 1222, 1225 (10th Cir. 2001)). "When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." United States v. Windom, 863 F.3d 1322, 1326 (10th Cir. 2017) (quoting United States v. Mosley, 743 F.3d 1317, 1322 (10th Cir. 2014)).

### III.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." Id. "The particularity requirement 'ensures that the search will be carefully tailored to its justifications.'" United States v. Otero, 563 F.3d 1127, 1131–32 (10th Cir. 2009) (quoting Maryland v. Garrison, 480 U.S. 79, 84 (1987)). "[P]ractical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched." United States v. Simpson, 152 F.3d 1241, 1248 (10th Cir.1998) (quoting United States v. Hutchings, 127 F.3d 1255, 1259 (10th Cir. 1997)).

Defendant argues that the warrant did not authorize the DPD's search of the detached garage because the warrant and supporting affidavit contained no reference

4

to the detached structure.[2] But police may search a detached structure not directly referenced in a warrant if the curtilage contains the detached structure. See United States v. DePugh, 452 F.2d 915, 920 (10th Cir.1971) (citing Steele v. United State No. 1, 267 U.S. 498, 503 (1925)) (holding that the description is sufficient if it "enable[s] the officers to ascertain the place to be searched"). We have consistently held that a search warrant authorizing a search of a certain place includes any detached structures and vehicles located within its curtilage. For example, in United States v. Earls, we held that a search warrant authorized the search of a detached garage, shed, and office because the detached structures fell within the curtilage, even though the search warrant did not describe them.[3] 42 F.3d 1321, 1327 (10th Cir. 1994); see also United States v. Sturmoski, 971 F.2d 452, 458 (10th Cir. 1992) (upholding the search of a horse trailer in the curtilage of a residence even though the warrant did not specifically state it); United States v. Gottschalk, 915 F.2d 1459, 1461 (10th Cir. 1990) (upholding the search of vehicles in the curtilage of residence

_____

[2] The government conceded at the district court that the search warrant did not include the detached garage. But "[i]t is well-settled that a court is not bound by stipulations of the parties as to questions of law." Koch v. U.S. Dep't of Interior, 47 F.3d 1015, 1018 (10th Cir. 1995) (quoting Dimidowich v. Bell & Howell, 803 F.2d 1473, 1477 n.1 (9th Cir. 1986)). Whether a detached structure was within the curtilage is a question of law. United States v. Cousins, 455 F.3d 1116, 1121 n.4 (10th Cir. 2006) (en banc footnote).

[3] Defendant argues that Earls is distinguishable because the search warrant in Earls stated, "the premises" and the search warrant here stated, "the place." We are not persuaded that this distinction makes a difference. In Earls, we reached our conclusion because the detached structures were within the curtilage, not because the search warrant stated, "the premises." 42 F.3d 1321, 1327.

even though they were not specifically enumerated in the warrant). So we must determine whether the detached garage falls within the curtilage of the residence. We hold that it does.

The curtilage and the home receive the same Fourth Amendment protections because "the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" Oliver v. United States, 466 U.S. 170, 180 (1984) (quoting Boyd v. United States, 116 U.S. 616, 630 (1886)). We review the curtilage determination *de novo*. United States v. Cousins, 455 F.3d 1116, 1121 n.4 (10th Cir. 2006) (en banc footnote).

To determine the curtilage of the residence, we consider four factors: (1) "the proximity of the area claimed to be curtilage to the home;" (2) "whether the area is included within an enclosure surrounding the home;" (3) "the nature of the uses to which the area is put;" and (4) "the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987) (citing California v. Ciraolo, 476 U.S. 207, 221 (1986) (Powell, J., dissenting)). The Dunn factors are useful analytical tools that bear upon our primary inquiry of "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." Id.

Proximity. The close proximity of the detached garage to the residence suggests that it falls within the curtilage of the residence. The detached garage was about twenty-five feet from the main residence, and a walkway through the backyard

connected the detached garage to the main residence.[4]  See United States v. Diehl, 276 F.3d 32, 39 (1st Cir. 2002) (holding that the curtilage included a driveway eighty-two feet from the camp); United States v. Reilly, 76 F.3d 1271, 1277 (2d Cir.) (holding that the curtilage included a cottage 375 feet from the main house), aff'd and amended, 91 F.3d 331 (2d Cir. 1996).

Enclosure.  The fence enclosure supports that the curtilage includes the detached garage.  A chain link fence surrounded the backyard and connected to the detached garage.  The fence did not enclose the entire building of the detached garage, but the fence started and ended at the detached garage and the garage door was inoperable—creating a full enclosure and requiring anyone wishing to enter the detached garage to do so from inside the fence.  Thus, the fence and the detached garage "serve[d] to demark a specific area of land immediately adjacent to the house that is readily identifiable as part and parcel of the house."  Dunn, 480 U.S. at 302; see also United States v. Swepston, 987 F.2d 1510, 1515 (10th Cir. 1993) (holding that an unfinished fence encircling both the house and the chicken shed supported that the curtilage included the chicken shed), abrogated on other grounds by Cousins, 455 F.3d at 1121 n.4.

Nature of the use of the area.  The third factor requires us to examine "the nature of the uses to which the area is put."  Dunn, 480 U.S. at 301.  A "detached

---

[4] We have held that a driveway entrance "several hundred feet" from the house was not part of the curtilage, a dramatic difference from the twenty-five feet here. Rieck v. Jensen, 651 F.3d 1188, 1193 (10th Cir. 2011).

garage . . . [is] the type of building[] which [is] ordinarily a part of residential property" as the activity of storing a vehicle in a detached garage is intimately tied to home life. Earls, 42 F.3d at 1327; Collins v. Virginia, 138 S. Ct. 1663, 1575 (2018) (holding that the curtilage included a driveway and "a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage"). Here, the overhead garage door was sealed, inoperable, and prevented the storage of a vehicle. Even with this information, the officers had no objective data indicating the use of the garage. But intimate activities of the home occurred in this detached garage.[5] Defendant used the detached garage as a living quarter. The detached garage had clothes, mouthwash, multiple chairs, a mirror, lamps, and drinks. Officers also found Defendant sleeping in a bed. Defendant used the detached garage as a bedroom, and the activities that occur in a bedroom are the type of private intimate activities that occur in the home.

---

[5] Justice Scalia opined that the officer's objective data about the use of the property lacked significance. Dunn, 480 U.S. at 294 (Scalia, J. concurring). The officer's perception is "no more relevant to whether the barn was curtilage than to whether the house was a house." Id; see also United States v. Cousins, 455 F.3d 1116, 1122–23 (10th Cir. 2006) (reviewing the actual use of the side yard and not officers knowledge to determine whether it's within the curtilage); United States v. Diehl, 276 F.3d 32, 40 (1st Cir. 2002) (holding that officers' objective evidence of intimate use is not required); Harris v. O'Hare, 770 F.3d 224, 240 (2d Cir. 2014) (considering the actual use); United States v. Reilly, 76 F.3d 1271, 1278 (2d Cir. 1996) (considering both the actual use of the area and the officer's objective knowledge and holding that the test is the actual intimate and private use made of the property); United States v. Davis, 530 F.3d 1069, 1079 (9th Cir. 2008) (looking to both the actual use of storing bulk food, wine, Christmas decoration and the officer's knowledge of marijuana smell); United States v. Johnson, 256 F.3d 895, 917 (9th Cir. 2001) (using both officer's knowledge and how the homeowner actually made use of the property).

Shielding from public view.  The public could not observe the interior of the detached garage, which weighs in favor of the notion that the detached garage existed within the curtilage.  The detached garage had two windows and one door, all of which faced the main residence and not the public alley.  The sealed inoperable overhead garage door was the only entrance facing the public alley.  The two boarded up windows protected the interior from public observation.  After reviewing the Dunn factors, we conclude that the curtilage included the detached garage.  Thus, the search warrant authorized the search of the detached garage.[6]

IV.

Defendant also argues that officers unreasonably detained him because his detention occurred outside the immediate vicinity of the premise to be searched.  We disagree.  "Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake."  Bailey v. United

---

[6] Arguably, Defendant used the detached garage as a separate residence.  But here, the property line and address encompassed the detached garage, and the same fence around the main residence connected to the detached garage.  Nothing the officers observed, including the sealed and inoperable garage door, placed them on notice that Defendant used the detached garage as a separate residence until after officers breached it.  See United States v. Smith, 531 F.3d 1261, 1266 (10th Cir. 2008) (holding that the warrant included the garage apartment because officers were not on notice about the separate residence); Harman v. Pollock, 446 F.3d 1069, 1080 (10th Cir. 2006) (holding that officers had no reason to believe that detached garage was a separate residence even though garage had separate address and mailbox, certain vehicles parked on property were not used by residents of main house, and Operation Order described simultaneous raids on "residence # 1" and "residence # 2").

9

States, 568 U.S. 186, 202 (2013).  Officers have three law enforcement interests in detaining an occupant during the execution of a search warrant: officer safety, facilitating the completion of the search, and preventing flight.  Michigan v. Summers, 452 U.S. 692, 702–03 (1981).  But the detention must occur within the "immediate vicinity of the premises to be searched."  Bailey, 568 U.S. at 201.  The search warrant authorized the search of the detached garage, and thus the immediate vicinity included the detached garage, and anyone inside it, such as Defendant. Defendant's detention was reasonable under the Fourth Amendment.

AFFIRMED.