FILED
United States Court of Appeals
Tenth Circuit

July 11, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BILLY DWIGHT SMITH, JR.,

Defendant-Appellant.

No. 07-6206

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 06-CR-00224-D-1)

---

James L. Hankins, Ogle & Welch, P.C., Oklahoma City, Oklahoma, for
Defendant–Appellant.

David L. Walling, Assistant United States Attorney (Timothy W. Ogilvie,
Assistant United States Attorney, and John C. Richter, United States Attorney, on
the brief), Oklahoma City, Oklahoma, for Plaintiff–Appellee.

---

Before **MURPHY, McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Defendant appeals his conviction under 18 U.S.C. § 1623(a) for attaching a

document he knew to be false to a motion filed in a federal district court under

penalty of perjury.

## BACKGROUND

In February 2001, Defendant was convicted of being a felon in possession of a firearm. At sentencing, the district court found that he qualified for an enhancement under the Armed Career Criminal Act and sentenced him to a 210-month term of imprisonment. We affirmed his conviction and sentence on appeal. *United States v. Smith*, 33 F. App'x 462 (10th Cir. 2002).

In October 2003, Defendant filed a 28 U.S.C. § 2255 motion, claiming that he was eligible for sentencing relief because one of the convictions supporting the ACCA enhancement had been expunged. He attached a certified copy of what appeared to be a 1989 order from an Oklahoma state court ordering the expungement of his 1982 burglary conviction. In response, the government stated that it believed the expungement order to be false. Defendant thereafter moved to withdraw the § 2255 motion.

The case agent who investigated the purported expungement order had several reasons to doubt its validity, including a document examiner's opinion that the order was not genuine and that the file stamp and signature portions had been copied or otherwise produced from genuine court documents. The agent learned that the original court file for the 1982 case had been checked out on September 15, 2003—the date a deputy court clerk certified the order attached to Defendant's motion as a copy—by Kellie Burns, who was Defendant's girlfriend

-2-

or common-law wife.[1]

The agent therefore requested and obtained a search warrant to search Ms. Burns's residence for, inter alia, court documents, receipts from the court clerk's office, correspondence between Ms. Burns and Defendant regarding the falsification of the order, and equipment that could be used to produce a document from other sources. The warrant authorized a search of "[p]remises known as 311 SE 41st . . . and any vehicles, outbuilding, sheds, and garages within the curtilage." (R. Doc. 23-3 at 1.) The description of the residence specifically included the fact that "[a] detached garage with a room built above it is located at the north end of the driveway." (*Id.*)

The officers executing the warrant seized letters and other papers from this garage apartment. After he was charged with the instant offense, Defendant filed a motion to suppress this evidence, arguing that the garage apartment was a separate residence with a separate mailing address and therefore that it was not covered by the warrant. After holding an evidentiary hearing, the district court denied his motion.

The case proceeded to trial, and the jury returned a verdict finding Defendant guilty of violating § 1623(a). Defendant was subsequently sentenced

---

[1] A deputy court clerk testified at trial that Ms. Burns checked out the case file both on September 12, 2003, and September 15, 2003, but it is unclear from the record when the case agent became aware of the September 12 occurrence.

to fifty-two months' imprisonment.

**DISCUSSION**

On appeal, Defendant challenges the district court's denial of his suppression motion, certain evidentiary rulings made by the court during trial, the court's instructions to the jury, and the court's application of a three-level enhancement during sentencing.

## I. Suppression Motion

In reviewing the district court's denial of Defendant's suppression motion, we view the evidence in the light most favorable to the government and accept the court's factual findings unless clearly erroneous. *United States v. Morgan*, 936 F.2d 1561, 1565 (10th Cir. 1991). "Ultimate determinations of reasonableness concerning Fourth Amendment issues and other questions of law, however, are reviewed de novo." *Id.* at 1565-66.

Defendant contends that the warrant obtained by the government for 311 SE 41st Street did not encompass the garage apartment, which was a separate residence located at 311 ½ SE 41st Street. He grounds this argument in the particularity requirement of the Fourth Amendment, which provides that a warrant must "particularly describ[e] the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.

This case "presents two separate constitutional issues, one concerning the validity of the warrant and the other concerning the reasonableness of the manner

in which it was executed." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). As for the first issue, we note that, despite the possible discrepancy in the address, "the description of the premises to be searched . . . still describe[d] the same piece of property." *Harman v. Pollock*, 446 F.3d 1069, 1078 (10th Cir. 2006) (alteration in original) (internal quotation marks omitted). Indeed, in *Harman* we upheld the validity of an overbroad warrant in spite of "indications suggesting different residences at 44 and 44 ½ West 2700 South," noting that the warrant accurately described both the main house and the detached garage and that the agent who obtained and executed the warrant had surveilled the property and knew the physical description of the structures thereon. *Id.* at 1079. The warrant in this case similarly contained an accurate and adequate description of the property, even if it turned out to be broader than appropriate, and the description was similarly based on the case agent's personal observation of the premises. We therefore conclude that any overbreadth in the warrant's description of the premises to be searched did not render the warrant invalid.

We thus turn to the question of whether the execution of the warrant was unreasonable and invalidated the search of the garage apartment. The Supreme Court has held that "an officer's reasonable failure to appreciate that a valid warrant describes too broadly the premises to be searched" does not invalidate an otherwise valid search. *Garrison*, 480 U.S. at 88. In *Garrison*, police obtained a warrant to search a building's "third floor apartment" based on their mistaken

belief that there was just one apartment on the third floor. *Id.* at 80. Only after incriminating items were found did the police realize that they were in a second apartment. *Id.* The Court concluded that the officers' failure to realize the overbreadth of the warrant was reasonable because nothing within their observation, nor anything said by the occupants of either apartment, suggested that they were searching in an area not authorized by the warrant. *Id.* at 88 & n.12. The Court held that the officers' reasonable execution of the overbroad warrant did not invalidate the search of the second apartment. *Id.* at 88.

Similarly, assuming for purposes of appeal that the warrant in this case was overbroad as Defendant claims, we conclude that the officers' failure to realize this overbreadth was objectively reasonable. The house and detached garage were surrounded by a tall stockade fence. The case agent verified prior to obtaining the warrant that the vehicles located in the driveway and on the street in front of the property were registered to Ms. Burns or Defendant. When the warrant was executed, Ms. Burns demonstrated access and control over the entire premises. She led the case agent to the garage apartment where the items being sought were kept, and she specifically told the agent that no one was currently living in the garage apartment. This was consistent with the agent's own observations that the apartment was apparently being used only for storage. After reviewing the record, we conclude that nothing observed by the officers or said by Ms. Burns would have put the officers on notice that the garage apartment was a separate

residence outside the scope of the warrant.  *See also Harman*, 446 F.3d at 1080-82 (holding that officers had reason to believe that detached garage was not separate residence even though, inter alia, garage had separate address and mailbox, certain vehicles parked on property were not used by residents of main house, and Operation Order described simultaneous raids on "residence #1" and "residence #2").  We thus see no error in the district court's denial of Defendant's motion to suppress.[2]

## III. Evidentiary rulings

Defendant objects to two evidentiary rulings made by the district court during trial, both relating to the phone calls between Defendant and Ms. Burns that were recorded by the prison phone-recording system.  First, Defendant objects to the introduction of a call in which Defendant described himself as an

---

[2] Because we affirm on this ground, we need not consider the alternative grounds provided by the district court for its decision, including its conclusion that Defendant lacked "standing" to contest the search.  We note that Fourth Amendment "standing" is not jurisdictional.  *United States v. DeLuca*, 269 F.3d 1128, 1135 (10th Cir. 2001).  Indeed, "[t]he Supreme Court has repeatedly insisted that we not use the term 'standing' as shorthand for a defendant's capacity to challenge a search."  *United States v. Higgins*, 282 F.3d 1261, 1270 n.3 (10th Cir. 2002); *see Rakas v. Illinois*, 439 U.S. 128, 140 (1978) (holding that the question whether a defendant can show a violation of his own Fourth Amendment rights "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing"); *Minnesota v. Carter*, 525 U.S. 83, 87 (1998) ("The Minnesota courts analyzed whether respondents had a legitimate expectation of privacy under the rubric of 'standing' doctrine, an analysis that this Court expressly rejected 20 years ago in *Rakas*.").  We thus assume without deciding that Defendant had a sufficient expectation of privacy to raise a Fourth Amendment challenge to the search.

"armed career criminal." Second, Defendant objects to the introduction of a call wherein he stated that he would need to hire counsel.

## A.  "Armed Career Criminal"

In the first recording at issue, Defendant mentioned that one of his prior convictions was instrumental in his receiving a lengthy prison sentence:  "Well, they used it to give me armed career criminal. . . . If it wasn't for that I wouldn't be sitting here doing seventeen years."  (Appellant's Br. at 43.)[3]  Defendant argued before the trial court and maintains on appeal that the "armed career criminal" reference was unduly prejudicial.

However, we conclude that the district court did not abuse its discretion by admitting this call.  *See United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997) (stating that we review admission of objected-to evidence for abuse of discretion).  This conversation was relevant to show both the materiality of the false statements at issue and Defendant's motive to submit the false expungement order.  We note that the jury was necessarily aware that Defendant had prior convictions, and we agree with the government's statement to the district court that Defendant "can't now claim unfair prejudice for words that he himself chose to use."  (Tr. at 93.)  We also conclude that any potential prejudicial effect was

---

[3] The record does not include the language of this recording or the recording itself, but the government appears to agree that Defendant has quoted it accurately.  We thus quote from Defendant's brief.

limited by the brevity of the reference and the fact that the government and its witnesses drew no attention to the phrase "armed career criminal" in the recording. Under these circumstances, we see no abuse of discretion in the court's admission of this evidence.

## B. Reference to hiring counsel

Next, Defendant argues that the court erred in admitting a recording of a conversation wherein he stated that he was going to need a lawyer.[4] Defendant also objects to the prosecutor's use of this evidence in closing arguments to argue that Defendant's immediate assumption that he was going to be charged with a crime and would need the assistance of an attorney was inconsistent with his defense of unwitting reliance on a third party to prepare the § 2255 motion.

We conclude, however, that Defendant has waived review of this issue. Although we review for plain error a defendant's "failure to make the timely assertion of a right," we do not review a claim of error that has been waived by a defendant's "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733-34 (1993) (internal quotation marks omitted). Thus, for instance, we will not review evidence admitted pursuant to

---

[4] The parties have not provided us with the actual language of this recording. However, a government witness testified that in this call Defendant told Ms. Burns "to sell some guns to get an attorney; said that he's going to need more than one attorney." (Tr. at 352.) On cross examination, this witness agreed with defense counsel that Defendant also talked about hiring a lawyer to legally vacate some of his other sentences.

stipulation "unless the defendant can show that the stipulation constituted ineffective assistance" under the test set forth in *Strickland v. Washington*, 466 U.S. 658, 689 (1984). *United States v. Aptt*, 354 F.3d 1269, 1284 (10th Cir. 2004).

In *Lawn v. United States*, 355 U.S. 339, 350-55 (1958), the Supreme Court held that the defendants had consciously and intentionally waived any objection to the admission of evidence when defendants' counsel used the exhibits at issue for his own purposes and then affirmatively stated that he had "no objection" to the evidence. In this case, Defendant's counsel specifically told the court before trial that the defense's only objection to any of the recorded conversations was the armed career criminal reference. Then, Defendant as well as the prosecution relied on the recording in which Defendant discussed hiring an attorney.[5] Although this sequence of events differs somewhat from that in *Lawn*, we nonetheless find *Lawn* controlling. As in *Lawn*, Defendant not only affirmatively represented that he had no objection to the admission of the evidence at issue, but he also relied on the evidence himself. As the Seventh Circuit has suggested, when a defendant's attorney "*affirmatively use[s]* the evidence to which he now objects as part of his theory of the case," an appellate court will be "hard-pressed

_____

[5] In cross-examining the government's witness and later in closing arguments, defense counsel suggested that this conversation showed that Defendant wished to pursue legal channels to vacate his past convictions and to address the potential problem with his § 2255 motion.

-10-

to interpret this" as an accidental or negligent failure to raise an objection rather than a conscious waiver of the objection. *United States v. Cooper*, 243 F.3d 411, 417 n.3 (7th Cir. 2001).

The record on appeal contains nothing from which we would conclude that defense counsel's decision to rely on the disputed evidence for his own purposes fell outside the wide range of reasonable professional assistance, *see Strickland*, 466 U.S. at 689, and we thus find the admission of this evidence unreviewable on appeal, *see Aptt*, 354 F.3d at 1284-85. In so holding, we do not decide the question of ineffective assistance of counsel. We simply conclude, based on the record on appeal, that counsel's actions constituted a valid waiver of Defendant's objection to the evidence. *See id.* As in *Aptt*, Defendant's claim of ineffective assistance of counsel "is a matter best considered together with any other ineffective assistance claims [he] might care to raise on collateral attack," *id.* at 1285, where the district court can develop a factual record, if necessary, and counsel may offer his reasons for the decision he made at trial, *United States v. Nelson*, 450 F.3d 1201, 1213 (10th Cir. 2006).

As for Defendant's related objection to the prosecutor's use of this evidence during closing arguments, we conclude that any error in the prosecutor's statements was not plain, given Defendant's waiver of any objections to the admission of this evidence and his own reliance on the evidence during closing arguments to support a different inference from that suggested by the prosecutor.

## III.  Jury Instructions

Defendant raises two claims of error regarding the jury instructions.  First, he claims that the court gave an erroneous instruction on reasonable doubt and the burden of proof.  Second, he claims that the court erred when it refused to give his proposed theory-of-defense instruction.

## A.  Reasonable doubt

Because Defendant did not object to the reasonable doubt instruction below, we review only for plain error.  *United States v. LaVallee*, 439 F.3d 670, 684 (10th Cir. 2006).  "Under this standard, Defendant must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affect[s] substantial rights."  *United States v. Fabiano*, 169 F.3d 1299, 1303 (10th Cir. 1999) (internal quotation marks omitted) (alteration in original).  "If these three requirements are met, then we may exercise discretion to correct the error if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (internal quotation marks omitted) (alteration in original).  We will find error under the first prong of this test only if we conclude that the instructions as a whole may have misled the jury.  *Id.*

This instruction read as follows:

> 4: Burden of proof—Reasonable doubt
>
> The law presumes a defendant to be innocent of crime.  Thus, the defendant, although accused, begins the trial with a clean slate with no evidence against him.

The law permits nothing but legal evidence presented before the jury in court to be considered in support of any charge against the accused.  So, the presumption of innocence alone is sufficient to acquit a defendant unless the jurors are satisfied, beyond a reasonable doubt, of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

. . . . A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitate to act.

Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his affairs.

You will remember that a defendant is never to be convicted on m[e]re suspicion or conjecture.  The burden is always upon the prosecution to prove guilt beyond a reasonable doubt.  This burden never shifts to a defendant, for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. . . .

(Tr. at 416-17.)

Defendant raises two specific objections to this instruction.  First, he claims that the "clean slate" language in the first paragraph suggested to the jury that Defendant and the government started on equal ground, thus diminishing the concept of the presumption of innocence.  However, we have previously upheld jury instructions containing nearly identical language to the contested "clean slate" language here.  *See United States v. Eads*, 191 F.3d 1206, 1211 (10th Cir. 1999) (finding that very similar instruction did not mislead jury as to presumption of innocence); *see also United States v. Curtis*, 344 F.3d 1057, 1069 (10th Cir. 2003) (noting that challenge to jury instruction must fail where we have previously upheld nearly identical instructions).

-13-

Second, he claims that the third and fourth paragraphs' usage of the phrases "hesitate to act" and "would not hesitate to rely and act upon" was confusing and did not adequately convey the government's burden of proof. For support, he cites to cases criticizing "willing to act" language in instructions on reasonable doubt. *See, e.g., Tillman v. Cook*, 215 F.3d 1116, 1126-27 (10th Cir. 2000). However, there is a distinction between being willing to act and acting without hesitation. *Cf. United States v. Mars*, 551 F.2d 711, 716 (6th Cir. 1977) (noting that "would not hesitate" language is preferable to "willing to rely"). Indeed, the fourth paragraph essentially stated the converse of the third—"that is, if a reasonable doubt makes a reasonable person hesitate to act, proof beyond a reasonable doubt is proof upon which a reasonable person would not hesitate to act." *United States v. Adujar*, 49 F.3d 16, 24 (1st Cir. 1995) (concluding that similar instruction did not impermissibly shift the government's burden of proof). Moreover, our review of the instructions as a whole convinces us that the jury was not misled as to reasonable doubt and the presumption of innocence. We therefore hold that Defendant has not shown error under the first prong of the plain error test.

## B. Theory of the defense

We review the district court's refusal to give a particular instruction for abuse of discretion, but we review de novo the ultimate issue of whether the instructions as a whole adequately advised the jury of the issues in the case and

-14-

the applicable law.  *United States v. Nacchio*, 519 F.3d 1140, 1158-59 (10th Cir. 2008).  "While the defendant is entitled to an instruction as to his theory of defense if there is evidence to support it, the court is not required to give an instruction that misstates the law or that is already covered by other instructions." *United States v. Hollis*, 971 F.2d 1441, 1452 (10th Cir. 1992) (citation omitted).

Defendant's proposed instruction stated: "The defendant asserts that he acted in good faith and that he paid a third party to prepare the 28 U.S.C. § 2255 motion, which he relied upon as legitimate without any knowledge or intent to file a document that contained a false material declaration."  (Appellant's Br. at 36.) Defendant argues that this instruction was necessary because the instructions as given suggested "that guilt could be ascertained by the fact that [Defendant] 'used' the bogus document by voluntarily and intentionally filing it with the court, even if he was unaware of . . . its bogus nature."  (*Id.* at 38.)  However, we conclude that the instructions as a whole clearly instructed the jury that it must find beyond a reasonable doubt that Defendant knew of the document's falsehood at the time it was filed.  We note that the instructions on the elements of the offense stated that the government must prove not only that Defendant used a document or record that contained a false statement or declaration, but also that he "knew such statement was false when the document was used."  (Tr. 421-22.) We conclude that "the charge given by the district court, if followed by the jury, was sufficient to preclude a conviction if the jury believed" that Defendant did

-15-

not know of the statements' falsity at the time he made or used them. *United States v. Chen*, 933 F.2d 793, 796 (9th Cir. 1991) (upholding district court's refusal to give requested "bad memory" instruction because jury was instructed that defendant must have known statements to be false at time he gave them). Thus, assuming for purposes of discussion that Defendant's proposed instruction was supported by the evidence, we conclude that the district court did not abuse its discretion by refusing to give this instruction.

## IV.  Sentencing Enhancement

Finally, Defendant argues that the court erred in imposing a three-level sentencing enhancement under Section 2J1.3(b)(2) of the Sentencing Guidelines. Under Section 2J1.3(b)(2), the offense level for a perjury conviction is increased three levels "[i]f the perjury . . . resulted in substantial interference with the administration of justice."  According to the commentary to this Guideline, "'substantial interference with the administration of justice' includes a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources."  U.S.S.G. § 2J1.3 n.1.

The district court imposed this enhancement based on the final portion of the commentary definition, finding that Defendant's conduct caused the unnecessary expenditure of substantial governmental or court resources in view of

-16-

the hearing held by the state to determine whether the file from Defendant's allegedly expunged 1982 conviction should be reopened. The district court found that Defendant's presence was required at the hearing and that the state incurred expenses transporting him there, that the hearing caused an expenditure of resources on the part of the district attorney and state court, and that an expert's services were used to evaluate the authenticity of the record.

On appeal, as before the district court, Defendant argues that this enhancement does not apply because the government did not prove that any expenditures by the government or court were "substantial" and because the state court did not need to hold this hearing due to the legal impossibility of Defendant's 1982 burglary case being expunged in the first place. We reject both of these contentions. The district court heard testimony at the sentencing hearing from the assistant district attorney who had represented the county court clerk's office in the state hearing. She testified that the court clerk's office cannot unseal a file without a court order. She also testified that the state court judge required Defendant's presence at the state hearing because it would have been inappropriate to decide whether the file should be unsealed in an ex parte hearing. Although she testified that she did not know the exact amount expended, she testified that the hearing required the expenditure of time and resources from the state judge and district attorney's office and that the state expended money paying for at least two deputies to transport Defendant from Memphis to Oklahoma City

for the hearing. Although this evidence of expenditures may have been limited, "[i]n light of the deference that we afford the district court regarding these factual determinations, we cannot say that its conclusion that [Defendant's] perjury resulted in the substantial expenditure of resources is clearly erroneous." *United States v. Sinclair*, 109 F.3d 1527, 1540 (10th Cir. 1997).

On appeal, Defendant also raises a new objection to this enhancement, arguing that the expenses associated with the state court hearing do not support the enhancement because they were part of the underlying perjury investigation. We have held that "'expenses associated with the underlying perjury offense should not form the basis of an upward adjustment,'" *Id.* (quoting *United States v. Duran*, 41 F.3d 540, 546 (9th Cir. 1994)), and the parties accordingly dispute whether the state hearing in this case was part of or separate from the underlying perjury investigation. Neither party is able, however, to cite to record support for their arguments because the record does not address what we take to be the relevant question—whether the state hearing was motivated simply by the federal investigators' request to have the records unsealed to assist their perjury investigation or whether it was motivated at least in part by an interest outside of the perjury investigation, such as the state's desire to clear its records.

This case thus highlights the need for a party to raise specific objections before the district court—if Defendant had raised this objection to the enhancement below, the district court could have heard evidence and made

findings regarding the factual question at issue. "While we have reviewed sentencing errors that were not raised in the district court under a plain error standard, plain error review is not appropriate when the alleged error involves the resolution of factual disputes." *United States v. Easter*, 981 F.2d 1549, 1555-1556 (10th Cir. 1992) (citation omitted); *see also United States v. Saucedo*, 950 F.2d 1508, 1518-19 (10th Cir. 1991) (explaining that, although government was required to prove by preponderance of evidence that defendant knew weapon was used in commission of offense, appellate court would not consider defendant's contention that record did not demonstrate knowledge because defendant did not raise issue before district court). We therefore will not review this objection to the enhancement.

For the foregoing reasons, we **AFFIRM** Defendant's conviction[6] and sentence.

---

[6] We reject Defendant's contention that the cumulative effect of the errors at his trial constituted reversible error. To the extent there were any errors in his trial, we conclude that their effect was harmless.