**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**September 19, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DEWAYNE GEORGE RAMDIAL,

Defendant - Appellant.

No. 24-6213
(D.C. No. 5:23-CR-00291-JD-1)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT*

_____

Before **McHUGH**, **EID**, and **FEDERICO**, Circuit Judges.

_____

A sheriff's sergeant stopped a vehicle driven by Dewayne George Ramdial for a minor traffic violation as he passed through Canadian County, Oklahoma. While waiting on the side of the interstate, the sergeant conducted an investigation into Ramdial's activities that was unrelated to the reason for the stop. This investigation led to the search of the vehicle, the seizure of two kilograms of cocaine, and – ultimately – Ramdial's felony drug conviction and thirty-month prison sentence. Ramdial timely appeals,

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

arguing the investigation violated the Fourth Amendment. We determine that it did not, so we affirm.

# I

On May 28, 2023, Defendant-Appellant Dewayne George Ramdial drove a black Nissan Murano eastbound on Interstate 40 through Canadian County. Sergeant Maurice James of the Canadian County Sheriff's Office was travelling in the same direction a short distance behind. Ramdial signaled that he would change from the right to the middle lane. Contemporaneously, he made the lane change. Oklahoma law requires 100 feet of advance notice before a lane change.[1] For this reason, at 6:13 p.m., Sgt. James directed Ramdial to pull to the side of the road. He complied.

Sgt. James' dashboard camera recorded the stop. The recording shows the evening was sunny. Moderate traffic prevailed. Sgt. James read the Nissan's license plate number to a county dispatcher. He then approached the vehicle on the passenger's side. He noticed that the Nissan had a specialty license plate honoring veterans, which made Sgt. James think it was a personal vehicle, not a rental.

---

[1] Sgt. James later testified consistent with his on-scene representation to Ramdial regarding the reason for the stop. Ramdial does not contest the legal basis for the stop.

2

At the sergeant's request, Ramdial produced his Florida driver's license. He confirmed that he still lived in Orlando. Sgt. James asked Ramdial what brought him to Oklahoma. Ramdial said that he had been attending a tattoo convention in Albuquerque and noted his plans to attend another tattoo convention in Houston. On further questioning, Ramdial said that he had borrowed the vehicle from a friend.

Sgt. James returned to his patrol car 17 seconds after 6:17 p.m. The first thing he did was to call dispatch to check if Ramdial had a valid license, any outstanding warrants, or a criminal history. At this point in time, Sgt. James later admitted, he did not have reasonable suspicion that Ramdial was engaged in illegal activity. While waiting for a call back from dispatch, Sgt. James conducted further investigation.

The sergeant began by running the Nissan's license plate through a license-plate recognition database. This database records and makes searchable the locations and images of vehicles' recent travel on public roads. When Sgt. James entered the Nissan's plate number, the database indicated the vehicle had been spotted two days prior in the Texas panhandle. And then, earlier on the day of the stop, it was located heading eastbound through Gallup, New Mexico. Gallup is significantly west of Albuquerque, where Ramdial claimed to have been at the convention. The database also indicated that the vehicle had made the same trip in previous

3

months at approximately the same time of the month.[2] Next, Sgt. James conducted an online search for recent tattoo conventions in Albuquerque. He found nothing.

Thirty-nine seconds after 6:21 p.m. – that is, four minutes and 22 seconds after Sgt. James returned to the patrol car – the dispatcher called back to report Ramdial had a valid license and no warrants or criminal history. At this point, Sgt. James determined that the traffic stop was over. Nonetheless, he concluded that Ramdial "was being deceitful about the true nature of his trip." R. I at 85. Sgt. James then reapproached the Nissan. He asked Ramdial to come with him to the patrol car. Sgt. James had already requested a K-9 officer come to the scene.

Inside the patrol car, Sgt. James and Ramdial discussed the latter's travel plans and the purported tattoo convention. Sgt. James asked Ramdial if there was anything illegal in the Nissan. Ramdial said there was not. Sgt. James asked for consent to search the vehicle. Ramdial said no.

The K-9 officer arrived at the scene 23 seconds after 6:32 p.m. The traffic stop had ceased approximately 11 minutes prior. The officer conducted a K-9 sniff. The dog alerted. Sgt. James then performed a search of the vehicle. He found approximately two kilograms of cocaine inside.

---

[2] Sgt. James later testified that this type of travel was "synonymous" with drug trafficking.

4

A grand jury indicted Ramdial on two counts: conspiracy to violate federal drug law, 21 U.S.C. § 846; and possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). Ramdial moved in the district court to suppress the fruits of the search. The district court, finding no Fourth Amendment violation, denied the motion. Ramdial entered a conditional plea of guilty to the second count, thereby preserving his ability to appeal denial of the suppression motion.[3] The Government dismissed the remaining count pursuant to the plea agreement. The district court sentenced Ramdial to 30 months' imprisonment. He timely appeals. We have jurisdiction under 28 U.S.C. § 1291.

## II

Ramdial's appeal presents only one issue: whether Sgt. James improperly extended the traffic stop without reasonable suspicion in violation of the Fourth Amendment. The district court's finding to the contrary, he argues, resulted in an erroneous determination on his motion to suppress.

## A

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the prevailing party – here, the Government.

---

[3] Federal Rule of Criminal Procedure 11(a)(2) allows for a defendant to enter a conditional plea with consent of the court and the government.

*United States v. Smith*, 531 F.3d 1261, 1265 (10th Cir. 2008). We accept the district court's factual findings unless they are clearly erroneous. *Id.*

A finding of fact is only clearly erroneous if it lacks factual support in the record or "if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir. 1996) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). The ultimate determination of reasonableness under the Fourth Amendment is a question of law, which we review de novo. *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir. 1999).

**B**

In this appeal, Ramdial argues only that his rights were violated because Sgt. James prolonged the stop without reasonable suspicion. The Fourth Amendment provides that a traffic stop may not – absent reasonable suspicion – be "'prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket" or warning for the violation prompting the stop. *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (alteration in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). The district court held that the stop was not extended by Sgt. James' parallel investigation and thus no *Rodriguez* violation occurred. The Government defends that holding on appeal.

6

The "ultimate touchstone" of the Fourth Amendment is reasonableness. *E.g.*, *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). A reasonable (and therefore constitutionally compliant) traffic stop may include officer actions that are "'reasonably related in scope' to the 'mission of the stop.'" *United States v. Cortez*, 965 F.3d 827, 833 (10th Cir. 2020) (quoting *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020)). Officers thus may: request a driver's license and registration; run "requisite" computer checks; issue citations or warnings; and inquire about travel plans. *Id.* at 838 (quoting *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015)). Caselaw is clear that such "ordinary inquiries incident to [the traffic] stop" do not violate the Fourth Amendment even in the absence of reasonable suspicion. *Rodriguez*, 575 U.S. at 355 (alteration in original) (quoting *Caballes*, 543 U.S. at 408).

*Rodriguez*'s application, though, can quickly become fraught due to the "confused state of Supreme Court and Tenth Circuit precedent" in this area. *United States v. Hayes*, 62 F.4th 1271, 1273 (10th Cir. 2023) (Baldock, J., concurring). "And, new fact patterns and circumstances can make [*Rodriguez*] difficult to apply," *United States v. Baker*, 108 F.4th 1241, 1252 (10th Cir. 2024) (Federico, J., dissenting), when determining what actions are incidental to the stop and what constitutes an unlawful prolonging of the stop.

Ramdial focuses on *United States v. Frazier*, which he submits is the strongest case for his argument that the traffic stop was unlawfully prolonged. *See* 30 F.4th 1165 (10th Cir. 2022). In *Frazier*, a Utah state trooper effectuated a traffic stop of the defendant-appellant. *Id.* at 1170. The trooper questioned Frazier incident to the stop. *Id.* at 1170–71. When the trooper returned to his patrol car, he did not begin by filling out a citation. *Id.* at 1171. Instead, he made efforts to contact a K-9 officer, first directly and then via dispatch. *Id.* The trooper then began work on the citation. *Id.* But he soon paused this work to search a license plate recognition database. *Id.* We have held that even "*de minimis*" delays violate the Fourth Amendment. *Id.* at 1173 (citing *Mayville*, 955 F.3d at 830). And, in *Frazier*, this court determined that the trooper's efforts to arrange a dog sniff and search of the database constituted investigative detours unlawfully extending the stop. *Id.* at 1180.

In the present case, the district court found *Frazier* to be distinguishable. It reasoned there is no evidence to indicate Sgt. James' non-traffic inquiries prolonged or added time to the traffic stop. We agree.

When Sgt. James returned to the patrol car, he first called dispatch about the driver's license, outstanding warrants, and criminal history. It was only while waiting for a response from the dispatcher that he engaged in non-traffic investigative pursuits. He searched the internet for tattoo

8

conventions and queried the license plate reader database. By the time the dispatcher called back regarding inquiries incident to the traffic stop, Sgt. James concluded that he had developed reasonable suspicion.[4]

Ramdial protests that this does not tell the whole story. We have directed law enforcement to remain "diligently engaged in routine tasks incident to the traffic stop" when reasonable suspicion to extend the stop is lacking. *United States v. Cates*, 73 F.4th 795, 808 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 1033 (2024). And Ramdial argues that Sgt. James did not follow this direction. According to Ramdial, Sgt. James could have undertaken "remaining traffic tasks" while awaiting a response from dispatch. But there is no indication that any such tasks remained. Sgt. James testified that he intended only to give Ramdial a verbal warning in order to conclude the traffic stop. Thus, in conducting a parallel investigation while awaiting a response from dispatch, Sgt. James "did not delay the stop at all." *Id.* at 808 n.5. Indeed, not a second was wasted.

---

[4] The parties acknowledge that this case does not turn on when Sgt. James developed reasonable suspicion. Thus, we assume for the purposes of this appeal that Sgt. James did not have reasonable suspicion at the time he initially returned to the patrol car, but that he did have it at the time the dispatch officer called back with the results of the warrants inquiry.

AFFIRMED.

Entered for the Court


Richard E.N. Federico
Circuit Judge