**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

COBY DWAYNE GREEN,

    Defendant-Appellant.

No. 05-5053

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OKLAHOMA**
**(D.C. No. 04-CR-87-CVE)**

---

Leena Alam, Assistant United States Attorney (David E. O'Meilia, United States Attorney, with her on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

Art Fleak, Tulsa, Oklahoma, for Defendant-Appellant.

---

Before **O'BRIEN**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

Tulsa police obtained a search warrant for Defendant Coby Green's home. Tulsa Police Officer William Wolthuis' affidavit in support of the warrant contained information provided by a confidential informant indicating Defendant was selling drugs from his home. The police executed the warrant and found two digital scales; $1,105 in

cash; 1.77 grams of methamphetamine; 12.27 grams of cocaine; 450.16 grams of marijuana; a sawed-off shotgun; and ammunition for the shotgun. Defendant was hiding in the garage near where police found the shotgun, ammunition and marijuana. A jury convicted Defendant of possession of cocaine and marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d), and possession of a firearm after former conviction of a felony in violation of 18 U.S.C. § 922(g)(1). On appeal, Defendant argues the district court erred in: (1) denying his motion for a new trial because the Government and/or its witness engaged in misconduct; (2) denying his motion to dismiss based on the composition of the district court's jury pool; (3) instructing the jury that Defendant could be convicted of either of two offenses charged in the conjunctive; and (4) denying his motion for judgment of acquittal based on an insufficient showing Defendant knew the sawed-off shotgun he possessed was of illegal length. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm. We discuss the facts as relevant to our discussion of the issues.

I.

Defendant first argues the district court erred in denying his motion for a new trial based on alleged prosecutorial and/or witness misconduct. Where, as here, a defendant's motion for a new trial or mistrial is based on alleged prosecutorial misconduct during trial and the defendant objects contemporaneously, this court reviews for an abuse of

2

discretion.  United States v. Villa-Chaparro, 115 F.3d 797, 803 (10th Cir. 1997).

Prosecutorial misconduct is considered harmless "unless there is reason to believe it influenced the jury's verdict."  United States v. Gabaldon, 91 F.3d 91, 94 (10th Cir. 1996).  "In assessing whether the misconduct [influenced the jury's verdict] we consider the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case."  Id.

A.

In this case, a pre-trial ruling prohibited the Government from introducing evidence concerning the confidential informant.  The district court's order permitted the Government to introduce the search warrant and introduce evidence concerning the process by which it was procured.  On the first day of trial, the Government assured the court that Officer Wolthuis, its first witness, had "been instructed not to get into any connection with the informant at all."  Shortly after the Government began its direct examination of Officer Wolthuis, the following exchange took place:

Q:      In March of this year did you begin an investigation of an individual named Coby Dwayne Green?

A:      Yes, Ma'am I did.

Q:      What led you to begin that investigation?

A:      I was given information about Mr. Green selling cocaine.

Defendant immediately objected and requested a mistrial.  The court denied the motion and attempted to remedy any prejudice by prohibiting the Government from introducing

3

any testimony concerning the search warrant. The court also limited the scope of Officer Wolthuis' testimony by prohibiting him from testifying about his subsequent surveillance and investigation and the process of obtaining the search warrant. The court further instructed the jury to disregard the witness's statement, stating "we are going to move ahead chronologically in time to matters which are, in fact, relevant to these proceedings."

The Government later called Tulsa Police Sargent Luke Sherman as an expert in the field of drug distribution. In establishing Sargent Sherman's credentials, the Government asked, "Okay, as part of your capacity in narcotics investigations, have you been involved in investigations of rap artists' and producers' involvement in drug dealing?" Defendant objected on the basis that the Government was attempting to paint him a drug dealer because he operated a music studio from his home. A bench conference ensued. The court instructed the Government to question Sargent Sherman about his experience with drug trafficking generally and refrain from commingling questions about the music business. Defendant did not request a limiting instruction.

## B.

Defendant argues the foregoing instances "infected the trial with unfairness." Even assuming the two instances Defendant complains about were improper, the district court's determination that neither instance influenced the jury's verdict was not an abuse

of discretion.[1] The evidence the Government presented included information regarding quantities and varieties of drugs Defendant possessed, their packaging and their concealment. Detective Sherman testified the quantity of drugs, their packaging, and the amount and denominations of cash recovered from Defendant's home were indicative of a drug distributor, not a user. The amount of evidence presented against Defendant satisfies us the alleged misconduct had a minuscule effect, if any, on the jury's verdict. See Gabaldon, 91 F.3d at 94 ("To warrant reversal, the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented."). This is especially true when viewed in conjunction with the judge's curative acts, his limiting instruction and the larger context of the entire trial. Id. Accordingly, the district court did not abuse its discretion in denying Defendant's motion for a new trial.

## II.

Defendant next argues the district court's method for selecting its jury pool violates his Sixth Amendment right to a pool comprised of a fair cross-section of the community. When a defendant challenges the constitutionality of a jury pool, we review the district court's factual findings for clear error. United States v. Chanthadara, 230 F.3d

---

[1] Without citation to legal authority, Defendant claims the judge ruling on his motion for new trial was not fit to do so because she did not preside over the jury trial. This argument is without merit. We rejected a due process challenge in United States v. Diaz, 189 F.3d 1239, 1243-44 (10th Cir. 1999) where five different district judges handled various portions of defendant's criminal proceedings. See also United States v. Smith, 997 F.2d 674, 682 (10th Cir. 1993) (no abuse of discretion where one judge presided over the trial and a different judge ruled on a motion for new trial).

5

1237, 1256 (10th Cir. 2000). We review de novo the district court's legal determination of whether a prima facie violation of the fair cross-section requirement has occurred. United States v. Shinault, 147 F.3d 1266, 1271 (10th Cir. 1998).

The district court summarily dismissed Defendant's "Motion to Dismiss Due to Violation of Right of Fair-Cross-Section Jury of Peers" as both untimely and meritless. On appeal, the Government submits Defendant's failure to comply with the procedures and time limitations found in the Jury Selection and Service Act (Act) forecloses his claim. See 28 U.S.C. § 1867. According to the Act, a defendant wishing to challenge a jury pool must file a motion to dismiss or a motion to stay before voir dire begins or within seven days after the defendant discovered or could have discovered the basis for the motion, whichever is first. Id. Defendant argues the constraints of § 1867 only apply to challenges brought under the Act, not Sixth Amendment challenges such as his.[2]

A.

Whether Defendant's failure to comply with the time limits under the Act bars his Sixth Amendment challenge presents a difficult issue. Section § 1867(e) of the Act

---

[2] To the extent Defendant based his claim on a violation of the Jury Selection and Service Act, it was untimely. The court appointed Defendant's first attorney on May 20, 2004. Defendant did not file his motion to dismiss until October 1, 2004, after the court appointed his third attorney. Because defense counsel's knowledge of the local rules, including the rules regarding the manner in which jury pools are selected, is imputed to Defendant, he had seven days from the time his first attorney was appointed to raise his objection to the jury pool composition. See United States v. Windrix, 405 F.3d 1146, 1157 (10th Cir. 2005).

provides:

> The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime . . . may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title. Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race, color, religion, sex, national origin or economic status in the selection of persons for service on grand or petit juries.

The Fifth and the Eighth Circuits read § 1867 to mean a defendant pursing a constitutional challenge to a jury pool need not comply with its provisions. See United States v. De Alba-Conrado, 481 F.2d 1266, 1270 n.5 (5th Cir. 1973) (citing the plain language of the statute and the legislative history in holding the procedures set forth in the Act are not applicable to constitutional challenges to a jury venire); United States v. Jones, 687 F.2d 1265, 1269 (8th Cir. 1982) (holding the failure to comply with the Act does not bar defendant from raising a constitutional challenge to jury selection procedures). The Eleventh Circuit, meanwhile, applies § 1867's requirements to constitutional challenges. United States v. Green, 742 F.2d 609, 612 (11th Cir. 1984) (holding that "[i]n the absence of strict compliance [with § 1867, defendant's] attempt to challenge the jury venire on constitutional grounds is without legal effect and is futile.").

Our cases addressing this question have not been a model of clarity. We have broadly stated § 1867 "provides the exclusive means for a party charged with a federal crime to challenge a jury." United States v. Bedonie, 913 F.2d 782, 794 (10th Cir. 1990) (applying the requirements of § 1867 to a constitutional challenge to a jury pool); see also

United States v. Cooper, 733 F.2d 1360, 1366 (10th Cir. 1984). More recently we have not taken this approach where defendants have raised both statutory and constitutional challenges to jury selection procedures. In United States v. Contreras, 108 F.3d 1255, 1265-68 (10th Cir. 1997), we concluded the defendant's statutory claim was invalid for failure to comply with the procedural requirements of the Act. But we did not apply the requirements of the Act to defendant's Sixth Amendment claim. Rather, we reached the merits of the claim. Thus, we did not treat failure to comply with the procedures of the Act fatal to the constitutional challenge. See also United States v. Morales, 108 F.3d 1213 (10th Cir. 1997). Fortunately, we need not address this tension between our prior decisions because Defendant cannot prevail on the merits of his claim. See Shinault, 147 F.3d at 1271 (declining to address defendant's failure to comply with § 1867, "because the merits dispute properly raised, briefed, and argued by the parties, and carefully considered by the district court, presents an insurmountable barrier for the appellant.").

B.

The Sixth Amendment guarantees a defendant the right to a jury pool comprised of a fair cross-section of the community. United States v. Ruiz-Castro, 92 F.3d 1519, 1527 (10th Cir. 1996). A defendant does not have a right to a jury of "any particular composition" and the jury actually chosen does not have to "mirror the community." Taylor v. Louisiana, 419 U.S. 522, 538 (1975). To establish a prima facie violation of a defendant's right to a jury drawn from a fair cross-section of the community, a defendant

8

must show: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is due to systematic exclusion of the group in the jury selection process. Duren v. Missouri, 439 U.S. 357, 364 (1979). We need not look beyond the first element—whether the group alleged to be excluded is a "distinctive" group—to determine that Defendant's Sixth Amendment claim lacks merit.

The district court's jury selection procedures are set forth in Northern District of Oklahoma Local Rule 47.1. According to the rule, fifty percent of the master jury wheel is comprised of individuals on voter lists in each county in the district. The other fifty percent of the master jury wheel is comprised of individuals on the driver license list of Tulsa County, the most urban county in the district. The names drawn from the voter lists "comprise the primary source of names within the district." N.D. LR 47.1(E). The names drawn from the driver license list in Tulsa County are considered "a supplementary source of names . . . ." Id. Defendant argues this policy systematically excludes a "distinct group"—namely drivers who live outside of Tulsa county, but do not vote. Defendant essentially asks the court to take judicial notice that rural people who have a driver's license and are not registered to vote are "anti-government" and, therefore, more friendly toward defendants. Defendant offers no support for his position other than conclusory statements, and we can locate no case law to support the notion that those who

9

drive, but do not vote, are considered a "distinct group."

Our sister circuits have adopted a three-part test for determining whether a group is "distinctive." Factors considered include whether: 1) the group is defined by a limiting quality (i.e. the group has a definite composition such as race or sex); 2) a common thread or basic similarity in attitude, idea, or experience runs through the group; and 3) a community of interests exists among members of the group such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process. See, e.g., United States v. Raszkiewicz, 169 F.3d 459, 463 (7th Cir. 1999); United States v. Fletcher, 965 F.2d 781, 782 (9th Cir. 1992); United States v. Canfield, 879 F.2d 446, 447 (8th Cir. 1989); Ford v. Seabold, 841 F.2d 677, 681-82 (6th Cir. 1988); Barber v. Ponte, 772 F.2d 982, 986-87 (1st Cir. 1985); Willis v. Zant, 720 F.2d 1212 (11th Cir. 1983). Groups found not to have common interests such that they are considered a "distinct group" include younger people, college students, and persons over 70. See Ford, 841 F.2d at 682 (younger persons); Fletcher, 965 F.2d at 782 (college students); Silagy v. Peters, 905 F.2d 986 (7th Cir. 1990) (persons over 70). Compare Duren, 439 U.S. at 364 (recognizing women as a distinct group); Shinault, 147 F.3d at 1272 (recognizing Asians, Blacks, and Hispanics as distinct groups); United States v. Yazzie, 660 F.2d 422, 426 (10th Cir. 1981) (recognizing Native Americans as a distinct group).

Like college students and certain age groups, we cannot say that persons who live in rural counties and do not vote have a "common thread in attitude" or that a common

10

experience runs through the group. See Fletcher, 965 F.2d at 782-83. Courts have accepted voter registration lists as acceptable means for selecting jury venires. See United States v. Gault, 141 F.3d 1399, 1402 (10th Cir. 1998) (citing Ruiz-Castro, 92 F.3d at 1527). In United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir. 1985), we specifically stated that persons who chose not to vote are not a cognizable group for jury selection purposes. Neither does a person's geographic location place that person in a distinct group. In United States v. Test, 550 F.2d 577, 582 n.4 (10th Cir. 1976), we stated "geographical imbalance . . . does not violate the statutory and constitutional requirement that the jury panel represent a 'fair cross section of the community.'" See also Canfield, 879 F.2d at 447 (residents of Minneapolis are not a distinct group); Zicarelli v. Dietz, 633 F.2d 312, 320 (3rd Cir. 1980) (no violation of the Sixth Amendment where residents of one county were excluded from the jury pool). Thus, persons holding a driver's license but choosing not to vote simply do not comprise a distinct group. We reject Defendant's argument to the contrary.

## III.

Defendant also claims the court improperly instructed the jury because the indictment charged him in the conjunctive while the jury was instructed in the disjunctive. Count One of the indictment charged Defendant with possessing with intent to distribute cocaine *and* marijuana. Count Three of the indictment charged Defendant with possessing a firearm *and* ammunition. The court instructed the jury it could find

11

Defendant guilty as to Count One if they concluded he possessed either cocaine *or* marijuana with the intent to distribute and guilty as to Count Three if it concluded he possessed either a firearm *or* ammunition.

Our decision in United States v. Earls, 42 F.3d 1321, 1327 (10th Cir. 1994) forecloses Defendant's argument. In Earls, we held "it is generally accepted procedure to use 'and' in an indictment where a statute uses the word 'or' because this assures that defendants are not convicted on information not considered by the grand jury.'" Id. (internal citations and quotations omitted). "Moreover, it is 'entirely proper' for the district court to instruct the jury in the disjunctive, though the indictment is worded in the conjunctive. Id. (citing United States v. Hager, 969 F.2d 883, 890 (10th Cir. 1992)).

## IV.

Defendant lastly argues the evidence was insufficient to support the jury's guilty verdict on possession of an unregistered sawed-off shotgun. Sufficiency of the evidence is a legal issue we review de novo. United States v. Lewis, 240 F.3d 866, 870 (10th Cir. 2001). On appeal, we "ask only whether taking the evidence . . . together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999). The jury convicted Defendant of possession of an unregistered sawed-off shotgun in violation of the National Firearms Act. 26 U.S.C. § 5861(d). Defendant alleges the Government did

not prove he knew the feature of the shotgun (its length) that brought it within the scope of the Act. See United States v. Staples, 511 U.S. 600, 602 (1994) (holding the government must demonstrate the defendant knew of the characteristics of the firearm that required it to be registered).

At trial, Defendant testified he had no knowledge of the gun found in his attic, much less its length. Tulsa Police Officer Shawn Hickey testified he found Defendant hiding in the garage near the entrance to the attic. After finding Defendant, Officer Hickey searched the attic which was accessible by retractable stairs in the middle of the garage. He found the shotgun within arm's reach of the attic stairs. He also observed the gun was the only item in the attic and it was clean while the rest of the attic was dusty. ATF Special Agent Brandon McFadden testified he measured the shotgun barrel at 16.5 inches, that it appeared short, and that anyone who looked quickly at the gun would notice it was short or that the barrel had been sawed off. Finally, the jurors were permitted to examine the shotgun firsthand, allowing them to make their own conclusions as to whether it was apparent the gun was sawed-off. Based on this evidence, a reasonable jury could have concluded Defendant not only knew about the shotgun, but was aware of the characteristics that made it subject to the Act.

For the foregoing reasons, the judgment of the district court is–

AFFIRMED.