FILED
United States Court of Appeals
Tenth Circuit

April 15, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EDGARDO JOSUE AGUILAR,

    Defendant - Appellant.

No. 13-6253
(D.C. No. 5:12-CR-00297-R-16)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, Chief Judge, **TYMKOVICH** and **MORITZ**, Circuit Judges.
_____

Edgardo Josue Aguilar appeals his jury convictions for one count of conspiracy to distribute methamphetamine and to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1); two counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and two counts of use of a communication facility in violation of 21 U.S.C. § 843(b). Aguilar contends (1) the government presented insufficient evidence to support his convictions for conspiracy and possession with intent to distribute; (2) the district court violated his due process rights by admitting an agent's testimony about an alleged co-conspirator's post-arrest request for counsel; and (3) the cumulative effect of these errors requires

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1

reversal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

This case arose from law enforcement's investigation of Iran Zamarripa, the regional supervisor of an international methamphetamine ring. Aguilar was one of Zamarripa's most trusted local distributors and one of the few individuals who contacted Zamarripa directly to obtain methamphetamine, rather than ordering it through Zamarripa's employees. In fact, Zamarripa trusted Aguilar enough to permit him to inspect the quality of the organization's product.

At trial, Zamarripa and his local manager, Alfredo Resendiz, testified against Aguilar and his alleged co-conspirators. According to Zamarripa and Resendiz, Zamarripa fronted Aguilar methamphetamine on two separate dates in May 2012: Resendiz testified he transferred a half-pound of methamphetamine to Aguilar on May 15, 2012, and Zamarripa testified that on May 21, 2012, he instructed Resendiz to leave a pound of methamphetamine at Resendiz's house for Aguilar to pick up. Within days, Aguilar repaid Zamarripa through Resendiz for all 1.5 pounds of fronted methamphetamine.

The government corroborated this testimony with evidence of law enforcement's visual surveillance and recorded telephone calls between Aguilar and Zamarripa, Aguilar and Resendiz, and Zamarripa and Resendiz. Although the recorded conversations contained no explicit references to methamphetamine, Zamarripa and Resendiz interpreted the calls for the jury, identifying code words the three men used to arrange the two transactions.

2

The jury also heard from Special Agent Casey Cox who testified that Aguilar's co-defendant, Bani Moreno, initially responded to Cox's post-arrest questions. But when questioned about his involvement in drug trafficking, Moreno refused to speak without an attorney present, and the interview ended. None of the co-defendants' attorneys objected to this testimony or requested a limiting instruction.

The jury found Aguilar guilty of one count of conspiracy to distribute methamphetamine and to possess methamphetamine with intent to distribute, two counts of possession of methamphetamine with intent to distribute, and two counts of use of a communication facility in committing these crimes. The district court imposed a 188-month prison sentence.

## DISCUSSION

### I. The government presented sufficient evidence to support Aguilar's convictions.

In this direct appeal, Aguilar first challenges the sufficiency of the evidence supporting his conspiracy conviction and his two convictions for possession of methamphetamine with intent to distribute.[1]

Aguilar urges us to review his claim de novo, while the government argues for plain-error review. But without sufficient evidence to support it, a conviction will almost

---

[1] In part, Aguilar claims the jury "was required to make repeated and cumulative speculative inferences" in order to find him guilty of possession with intent to distribute and conspiracy to possess methamphetamine with intent to distribute. Because Aguilar fails to identify any impermissible inferences upon which the jury allegedly relied, we decline to reach this argument. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (citing what is now Fed. R. App. P. 28(a)(8)(A)) (explaining court will not consider issues inadequately presented in opening brief).

always constitute plain error. Thus, reviewing for plain error in this context differs little from our de novo review of a properly preserved sufficiency claim. *See United States v. Rufai*, 732 F.3d 1175, 1189 (10th Cir. 2013) (quoting *United States v. Duran*, 133 F.3d 1324, 1335 n.9 (10th Cir. 1998)) (concluding plain error review and review for sufficient evidence "'usually amount to largely the same exercise'"). Under our sufficiency-of-the-evidence test, we view the evidence in the light most favorable to the government and ask whether the evidence—and any reasonable inferences to be drawn from it—would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *United States v. Green*, 435 F.3d 1265, 1272 (10th Cir. 2006).

A.      *Possession of methamphetamine with intent to distribute*

To support Aguilar's convictions under 21 U.S.C. § 841(a)(1), the government was required to show Aguilar (1) possessed methamphetamine; (2) knew he possessed it; and (3) intended to distribute it. *See United States v. Mains*, 33 F.3d 1222, 1228 (10th Cir. 1994).

Although Zamarripa and Resendiz testified Zamarripa fronted[2] Aguilar a half-pound of methamphetamine on May 15, 2012, and a pound of methamphetamine on May 21, 2012, Aguilar contends this testimony was insufficient to prove possession with intent to distribute.

We disagree. First, the government did not rely solely on Aguilar's co-conspirators' testimony; it presented recorded telephone calls and video surveillance

---

[2] *See United States v. Hardwell*, 80 F.3d 1471, 1498, *rev'd on reh'g in part*, 88 F.3d 897 (10th Cir. 1996) (defining "fronting" as "supplying drugs on consignment or on credit").

4

corroborating their testimony. Second, even without the corroborating evidence, Zamarripa's and Resendiz's testimony—if believed by the jury—sufficiently established that Aguilar twice possessed methamphetamine. *See United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004) (explaining we do not determine credibility of witnesses in evaluating sufficiency, but ask only whether evidence, if believed, established each element of crime).

From the same evidence, the jury could also infer Aguilar's intent to distribute. *See United States v. Pulido-Jacobo*, 377 F.3d 1124, 1131 (10th Cir. 2004) (stating jury may infer intent to distribute from possession of large quantities of drugs); *United States v. Small*, 423 F.3d 1164, 1184 (10th Cir. 2005) (explaining that fronting arrangement whereby individual receives drugs on credit suggests expectation that individual will redistribute drugs for profit). Thus, we conclude the government presented sufficient evidence to allow a reasonable jury to convict Aguilar of two counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

B.    *Conspiracy to possess methamphetamine with intent to distribute*

Aguilar also challenges the sufficiency of the evidence supporting his conspiracy conviction. To prove the conspiracy charge, the government was required to show Aguilar (1) agreed with at least one other person to violate the law; (2) knew of the conspiracy's objectives; and (3) knowingly and voluntarily involved himself in the conspiracy. Further, the government was required to demonstrate (4) interdependence between the co-conspirators. *See United States v. Foy*, 641 F.3d 455, 465 (10th Cir. 2011).

5

Evidence that Zamarripa twice fronted Aguilar large quantities of methamphetamine was sufficient to allow the jury to infer an agreement between the two men to distribute methamphetamine. *See United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994) (explaining jury may infer agreement between two or more parties based on circumstantial evidence indicating concerted action directed toward common goal). It was also sufficient to prove the second and third conspiracy elements, *i.e.*, that Aguilar knew of the conspiracy's objectives and knowingly and voluntarily involved himself in the conspiracy. *See Small*, 423 F.3d at 1183 (noting evidence of multiple drug purchases for resale permits inference buyer was aware of and "shared common goals with" conspiracy); *United States v. Bell*, 154 F.3d 1205, 1208 (10th Cir. 1998) (stating jury may presume defendant who acts in furtherance of conspiracy's goal is knowing participant). Finally, evidence of the fronting arrangement also was sufficient to establish interdependence. *See United States v. Acosta-Gallardo*, 656 F.3d 1109, 1124 (10th Cir. 2011) (finding fronting arrangement indicative of interdependence).

The government presented evidence Aguilar ordered and obtained considerable quantities of methamphetamine from Zamarripa on credit and then promptly made good on his debts. Viewing this evidence in the light most favorable to the government, we conclude a reasonable jury could convict Aguilar of possession with intent to distribute and conspiracy. Thus, we find no error, plain or otherwise.

**II. Aguilar fails to establish the admission of Cox's testimony regarding Moreno's post-arrest request for counsel constituted plain error.**

Next, Aguilar argues the admission of Cox's testimony regarding his co-defendant

6

Moreno's post-arrest request for counsel violated Aguilar's due process rights under *Doyle v. Ohio*, 426 U.S. 610, 619 (1976) (concluding use of petitioners' post-arrest silence for impeachment purposes violated petitioner's due process rights). Further, Aguilar contends this error was so prejudicial as to require reversal of Aguilar's convictions.

Because Aguilar failed to object to Cox's testimony, we review for plain error. *See United States v. Kamahele*, 748 F.3d 984, 1018 (10th Cir. 2014). To establish plain error, Aguilar must demonstrate (1) an error, (2) that is clear or obvious under current law, and (3) that affected his substantial rights. If Aguilar can make such a showing, we may reverse only if (4) the error seriously affected the fairness, integrity, or public reputation of the proceedings. *United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011).

Here, we need consider only the third prong of the plain-error test. Even if we assume the admission of Cox's testimony about Moreno's post-arrest request for counsel constituted plain and obvious error, Aguilar must demonstrate the error affected his substantial rights, *i.e.*, it was so prejudicial as to affect the trial's outcome. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (discussing prejudice prong of plain-error test).

But Aguilar makes no effort to explain precisely how the admission of Cox's testimony prejudiced his substantial rights. Instead, Aguilar generally suggests, "In a conspiracy case such as this one, all co-defendants are prejudiced when the prosecution blatantly violates the due process rights of one co-defendant." Aplt. Br. at 20.

Given the substantial evidence of Aguilar's guilt and his failure to explain how Cox's comment regarding Moreno's post-arrest request for counsel prejudiced Aguilar,

7

we conclude Aguilar has failed to meet his burden to show the alleged error affected his substantial rights. Thus, we reject Aguilar's claim of error without addressing whether he can satisfy the other three prongs of the plain-error test. *See United States v. Pablo*, 696 F.3d 1280, 1301 (2012) (declining to address remaining three plain-error requirements based on defendant's failure to meet third requirement). And because Aguilar has, at best, demonstrated a single error, we also reject his cumulative-error claim. *See United States v. Franklin-El*, 555 F.3d 1115, 1128 (10th Cir. 2009) (explaining cumulative-error analysis applies only when defendant establishes at least two actual errors).

## CONCLUSION

Because we conclude sufficient evidence supports Aguilar's convictions for conspiracy and possession with intent to distribute, and the district court's admission of evidence of his co-defendant's post-arrest request for an attorney did not affect Aguilar's substantial rights, we affirm.

Entered for the Court

Nancy L. Moritz
Circuit Judge

8