**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CLIFTON LEE WILSON,

      Petitioner - Appellant,

v.

JOE ALLBAUGH, Director,

      Respondent - Appellee.

No. 17-6236
(D.C. No. 5:15-CV-01281-C)
(W.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

Clifton Lee Wilson, a pro se state prisoner convicted of first-degree murder,

requests a certificate of appealability (COA) to appeal from a district court order denying

his 28 U.S.C. § 2254 habeas petition.  Exercising jurisdiction under 28 U.S.C. § 1291, we

deny Wilson's request and dismiss this matter.

**BACKGROUND**

In July 2010, Wilson told Rebecca Masson and James Dinwiddie several times

that he wanted to kill a man named Timothy Young, who lived in their neighborhood.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

According to Masson, Wilson "said he wanted to get [Young's] debit card pin" and then watch him die. Apr. 11, 2012, Trial Tr., Vol. III at 528.

Young was last seen alive around 4:00 p.m. on August 7, 2010. Around 11:00 p.m. that evening, two men drove Young's car to a bank ATM and attempted to withdraw money using Young's debit card. One of the men was African-American, as is Wilson. That man covered the ATM camera with his gloved hand while attempting to operate the machine. Unsuccessful, the men drove to another ATM and withdrew $600. Three days later, on August 10, Young's debit card was again used at an ATM while the machine's camera was covered. On August 13, Young's decomposing body was found inside his home.

Masson saw a news report about Young's death and asked Wilson if he was involved. Wilson told her, "Don't say that out loud, . . . [s]omebody's liable to hear ya." *Id.* at 537.

In September 2010, Wilson told his ex-girlfriend, Carmella Brown, that he "had something to do with [Young's murder]." *Id.* at 603. Wilson explained he had cut Young's throat while robbing him, and that in the process, had cut his own hand. He also described returning to Young's home after the murder to wipe away his fingerprints.

During a police interview, Wilson admitted he was present on August 10 at the ATM machine when Young's card was used. He claimed, however, that an unknown man paid him to cover the camera while the money was withdrawn. Wilson further admitted that his blood might be found in Young's home, but said he had cut his hand there while using a ladder and a wood chipper.

2

Police arrested Wilson for tampering with security equipment during the August 10 ATM withdrawal. While incarcerated, Wilson told another inmate, Kevin Mitchell, that he had killed a man who did not pay him for work. Wilson further told Mitchell that if police were to find his blood in the victim's home, he would claim he had cut his hand while working outside and then went inside to care for the wound.

Wilson was charged with first-degree murder. During jury selection, defense counsel

> move[d] to excuse the entire jury panel based on Batson[1] because there's no minorities in the whole panel. There's none in the 30 that's been called. There's none in the back to replace them.
> I'm sure there's at least one minority somewhere in this county that could have been called for jury duty.

Apr. 9, 2012, Jury Trial Tr., Vol. I at 93. The trial court found *Batson* inapplicable and denied the motion.

Wilson's defense theory was that Young's unidentified life partner may have committed the crime. The jury found Wilson guilty, and the court sentenced him to life imprisonment.

On appeal through new counsel to the Oklahoma Court of Criminal Appeals (OCCA), Wilson claimed that (1) his due-process rights were violated by the admission of gruesome photos and a photo line-up showing him wearing jail clothing; (2) trial counsel was ineffective by not presenting evidence that (a) Mitchell had a deal with the

---

[1] *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race").

prosecution, and that (b) Wilson had a source of money not connected to Young; (3) prosecutors committed misconduct by withholding evidence of a deal with Mitchell, by not correcting Mitchell's testimony denying such an agreement, and by giving inadequate notice of Mitchell's testimony; and (4) cumulative error infected the trial. The OCCA affirmed.

Wilson then filed two pro se postconviction applications. In the first application, Wilson claimed trial counsel was ineffective in handling pretrial matters and evidence at trial, opposing prosecutorial misconduct, "argu[ing] perponderance [sic] of evidence"; and providing "no Black Jur[o]rs." R., Vol. I at 208-09. To an extent, some of these claims overlapped with the ineffectiveness claims raised on direct appeal. The trial court denied relief and the OCCA affirmed, finding the claims were procedurally barred, as they were or could have been raised on direct appeal.

Wilson later filed another postconviction application, arguing insufficiency of the evidence and actual innocence; a violation of equal protection in the jury's composition; and ineffective assistance of appellate counsel in not advancing those claims on direct appeal. The trial court again denied relief and the OCCA affirmed, finding the claims barred because they could have been raised earlier.

Finally, Wilson sought federal habeas relief on the grounds of (1) sufficiency of the evidence and/or actual innocence; (2) jury composition; and (3) ineffective assistance of trial and appellate counsel. A magistrate judge recommended denying relief, and Wilson filed objections. The district judge reviewed the matter de novo, adopted the

4

Magistrate Judge's recommendation, denied Wilson's habeas petition, and declined to issue a COA.

## DISCUSSION
### I. Standards of Review

To obtain a COA, Wilson must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). And when a district court dismisses a § 2254 claim on procedural grounds, the petitioner is entitled to a COA only if he shows both that reasonable jurists would find it debatable whether he had stated a valid constitutional claim and whether the procedural ruling was correct. *Id.* at 484-85.

In applying this standard, we incorporate the Antiterrorism and Effective Death Penalty Act's (AEDPA's) "deferential treatment of state court decisions." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). If a state court has rejected a claim on the merits, § 2254 relief is available only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Because Wilson proceeds pro se, we construe his filings liberally but do not act as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## II. Sufficiency of the Evidence/Actual Innocence

The district court noted that Wilson had defaulted his claims of insufficient evidence and actual innocence in state court, and it then concluded Wilson had not shown grounds in the § 2254 proceedings to excuse that default. Wilson has not shown that reasonable jurists could debate the district court's procedural ruling.

Specifically, "AEDPA strictly limits a federal court's ability to consider issues on habeas review that the state court deemed procedurally barred." *Hammon v. Ward*, 466 F.3d 919, 925 (10th Cir. 2006). Thus,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Wilson does not contest the independence and adequacy of Oklahoma's procedural bar rules, which waive claims that could have been, but were not, raised in a prior proceeding, *see* Okla. Stat. Ann. tit. 22, § 1086. Nor could he. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002) (observing that Oklahoma's waiver rule for claims that could have been raised previously "is an independent and adequate state ground for denying habeas relief").

Instead, Wilson focuses his COA request on attempting to show he is actually innocent of Young's murder. Initially, we point out that "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner

must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *see also LaFevers v. Gibson*, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus."). Even then, such claims are "rare" and "appl[y] to a severely confined category [of] cases" because the petitioner must show that "in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386, 394-95 (2013) (internal quotation marks omitted).

Wilson does not, however, identify any new evidence showing his innocence in the face of the overwhelming evidence adduced at trial of his guilt. He claims that "[i]t [was] never proven at trial by perponderance [sic] of evidence [that] he is guilty of killing anyone" and that "[t]here was no physical evidence to support the State's assertion of murder." COA Request at 16. It is not enough for a petitioner to simply attack the evidence actually presented at his trial and claim that, absent the admission of such evidence, there was not enough evidence to convict him. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (stating that innocence may be proven with "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial").

Wilson could avoid the bar to considering his sufficiency-of-the-evidence claim on the ground of ineffective assistance of appellate counsel. *See Hammon*, 466 F.3d at 925 (finding allegations of ineffective assistance by appellate counsel sufficient to excuse the

7

procedural bar). But such an ineffective-assistance claim can serve as cause to excuse a procedural default only if that claim is not itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Wilson did not assert ineffective assistance of appellate counsel until his second postconviction application, and the OCCA found the claim barred because it was not included in his initial application. The district court observed that appellate-ineffectiveness claims are subject to procedural bar, *see, e.g.*, *Lay v. Royal*, 860 F.3d 1307, 1316-17 (10th Cir. 2017), *cert. denied*, 2018 WL 807862 (U.S. Apr. 16, 2018), and that Wilson had shown neither cause and prejudice nor a fundamental miscarriage of justice to avoid the bar.

In his COA request, Wilson identifies no basis for excusing the procedural default of his ineffective-assistance-of-appellate-counsel claim. Accordingly, we conclude that the district court's application of procedural bar to Wilson's sufficiency-of-the-evidence claim is not debatable.

### III. *Batson*

We begin by noting that "[a] defendant does not have a right to a jury of any particular composition and the jury actually chosen does not have to mirror the community." *United States v. Green*, 435 F.3d 1265, 1270 (10th Cir. 2006) (internal quotation marks omitted). Because Wilson appears to be protesting the lack of African Americans in his jury pool, his claim implicates the Sixth Amendment's guarantee of a jury pool comprising a fair cross-section of the community, *id.*, rather than a *Batson* challenge to a prosecutor's use of peremptory challenges to remove potential jurors because of their race, *see Batson*, 476 U.S. at 89.

8

Wilson raised such a Sixth Amendment claim in his second postconviction application, and the OCCA found it barred. The district court determined that the claim was procedurally defaulted. For the reasons discussed above regarding the default of Wilson's sufficiency-of-the-evidence claim, we conclude that no reasonable jurist could debate the district court's procedural ruling.

## IV. Ineffective Assistance of Appellate Counsel

As discussed above in the context of whether Wilson could avoid the procedural bar on his sufficiency-of-the-evidence claim, he has not shown that the procedural bar to his appellate-ineffectiveness claim is debatable.

## V. Ineffective Assistance of Trial Counsel

On direct appeal, Wilson raised two ineffective-assistance-of-trial-counsel claims. First, he claimed trial counsel was ineffective by not presenting evidence that prosecutors had promised Mitchell, the jail house informant, leniency in his probation revocation case if he testified against Wilson on the murder charge. The OCCA applied *Strickland v. Washington*[2] and rejected the claim. The OCCA explained that while Mitchell did have an agreement with prosecutors to testify against Wilson in the separate and earlier case involving Wilson's tampering with the ATM camera, there was no evidence extending such an agreement to the murder case. The district court agreed, observing that Wilson

---

[2] In *Strickland*, the Supreme Court held that "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction" requires "the defendant [to] show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984).

9

had made no attempt in his § 2254 petition to demonstrate the unreasonableness of the OCCA's application of *Strickland*.

In his request for a COA, Wilson claims Mitchell "fabricated his whole tale" and is a "racist." COA Request at 17. But he does not address the reasonableness of the OCCA's decision. A federal habeas court's review of defense counsel's performance is "highly deferential" and forecloses relief if "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks omitted). Wilson has not shown that the district court's rejection of his *Strickland* claim regarding Mitchell is debatable.

Wilson's second ineffective-assistance-of-trial-counsel claim raised on direct appeal was that defense counsel should have presented testimony from Paula Cecil, Wilson's new girlfriend. According to Wilson, Cecil was taking care of his financial needs, thereby rebutting the State's theory that his money was from Young's murder. The OCCA rejected the claim, reasoning that Cecil's testimony would have been cumulative of testimony provided by Masson that Wilson relied on various women for money. The federal district court agreed with the OCCA's reasoning, and noted that Wilson had not attempted to demonstrate the unreasonableness of that determination. Wilson has not shown that the district court's ruling is debatable.

Wilson advanced his other ineffective-assistance-of-trial-counsel claims in his first postconviction application,[3] but the OCCA found them barred by res judicata or waiver because the claims either were, or could have been, brought on direct appeal. The district court rejected all of the waived claims as procedurally barred, and it reiterated that habeas relief was unavailable to the extent trial counsel had not provided evidence of a prosecution deal with Mitchell and testimony from Cecil concerning the source of Wilson's money.

Wilson has not shown that the district court's decision is debatable. Ineffective-assistance-of-trial-counsel claims not raised on direct appeal are subject to procedural bar where, as here, trial counsel and appellate counsel were different and the trial record is sufficient to resolve the claim. *See Welch v. Workman*, 639 F.3d 980, 1012 (10th Cir. 2011). Wilson has not shown grounds to excuse that bar. And although "[a] state court's invocation of res judicata does not . . . create a procedural bar to relief under § 2254," *Davis v. Workman*, 695 F.3d 1060, 1073 (10th Cir. 2012), we have already concluded that the ineffectiveness claims concerning a prosecution deal with Mitchell and the source of Wilson's money do not warrant a COA.

---

[3] As indicated earlier, Wilson claimed trial counsel was ineffective in handling pretrial matters and evidence at trial, opposing prosecutorial misconduct, "argu[ing] perponderance [sic] of evidence"; and providing "no Black Jur[o]rs." R., Vol. I at 208-09. Some of these claims resembled ineffectiveness arguments made on direct appeal.

**CONCLUSION**

We deny Wilson's request for a COA and we dismiss this appeal.  We also deny

Wilson's request to proceed in forma pauperis.

Entered for the Court


Mary Beck Briscoe
Circuit Judge